LANGE *v.* BURKE.

Opinion delivered February 16, 1901.

CORPORATIONS—IDENTITY.—The facts that two corporations are practically under the control of the same persons, who are the owners of a large majority of the stock, that the two corporations have intimate business relations, and that they employ the same bookkeeper, each corporation paying one-half of his salary, do not prove that the two corporations are in fact one and the same; and, on the insolvency of the two corporations, a claim of one of the corporations against the other will not, upon proof of the above facts, be postponed until other creditors of the latter corporation are paid.

Appeal from Phillips Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

*J. C. Hawthorne,* for appellant.

The appellants are estopped by their dealings with the two corporations to allege their identity. 6 Thompson, Corp. p. 376, § 518; 1 S. W. 319; S. C. 47 Ark. 269; 91 U. S. 56; 95 U. S. 665; 12 Ark. 769; 68 N. W. 863. The evidence shows the separate existence of the two corporations. If the one corporation owned the other as a branch, it would be only by virtue of charter power to do so, and the burden is on the one alleging this fact. 13 Pet. 519; 4 How. 16; 14 Pet. 122; 3 Head, 337; 92 Tenn. 115; 18

L. R. A. 252; 29 Cent. Law J. 9; 20 S. W. 427; 175 Ill. 125.    In the absence of such authority, the contract should not be ratified so as to bind the corporation.    58 U. S. App. 674; S. C. 30 C. C. A. 409; 86 Fed. 742.

*Jno. J.* and *E. C. Hornor,* for appellee.

Under the evidence adduced it is plain that the corporations were identical.    Appellee is in no position to allege that the ownership of one corporation by the other was *ultra vires.*    The plea will not be tolerated when its results will be inequitable.    110 N. Y. 531; 12 S. W. 1054; 23 How. 400; 62 N. Y. 69; 51 N. W. 642; 137 N. Y. 417; 26 Ark. 663; 7 Thompson, Corp. § 8314; also 5 Thompson, Corp. § 6015.

BATTLE, J.    On the fifth day of February, 1897, the United States One Stave Barrel Company, and three other corporations filed a complaint, in the Phillips circuit court, against the Kaiser Lumber Company, which for convenience we shall call the Lumber Company.    They allege that the defendant is a corporation, organized and doing business under the laws of the state of Arkansas; that it was largely indebted to each of them, and was, on the 27th of January, 1897, insolvent, a part of its commercial paper having gone to protest, and it having conveyed all its property to a trustee to secure a large indebtedness alleged to be owing to the Standard Eagle Box & Lumber Company.    They asked that the affairs of the defendant be closed up; that a receiver be appointed to take charge of its property; and that its creditors be required to present their claims to the receiver within ninety days, or be barred from participating in its assets; and that its property be sold to pay its debts.

On the 8th of February, 1897, R. C. Burke was appointed such receiver.    On the 10th of April, 1897, Berthold Lange, as trustee for the creditors of the Standard Eagle Box & Lumber Company, a corporation organized under the laws of Missouri, which for convenience we will call the Box Company, filed a petition in the proceeding instituted by the plaintiffs, and alleged that the defendant was indebted to him as such trustee in various sums, amounting in the aggregate to the sum of $57,067.72, and asked for judgment in his favor as such trustee for said indebtedness, and that the receiver be required to pay the same out of the assets of the defendant, or such a proportionate part as may be

paid to other creditors. On the same day he presented his claim. to the receiver, who referred it to the court.

After hearing the evidence adduced by all parties, the court found that the Lumber Company was a branch of the Box Com-. pany, and was incorporated as the Kaiser Lumber Company for convenience only; that the former was indebted to the latter in. the sum of $53,508.83, and that the latter was not entitled to recover anything until the creditors of the former are paid, and postponed its collection until that time; and the trustee appealed.

The appellant complains of the action of the circuit court because it found that the Lumber Company was a branch of the Box Company, and postponed the payment of his claim until all the other creditors of the Lumber Company are paid. Is this complaint well founded?

The two companies are separate corporations. One was organized under the laws of Missouri, and the other under the laws of Arkansas. The Box Company was created sometime before the Lumber Company was organized. They were organized for different purposes—one for the manufacture of lumber, and the other for another purpose not clearly shown by the evidence.

In 1894 the Box Company decided to make an effort to lease a certain mill at Helena, in this state, and saw their own cottonwood, gum, oak, and cypress lumber, and thereby save a large amount of money. Its president and treasurer were appointed a committee to negotiate with the owner and ascertain what terms could be made. The president, A. J. Kaiser, and the Consolidated Box Company, of Kansas City, succeeded in obtaining an option to purchase the mill of the Schutte Lumber Company at Helena, Ark., and the action of the president was approved by the board of directors of his company. The option was permitted to expire without a purchase. Subsequently Kaiser, the president, and C. W. Ohrndorf, the treasurer of the Box Company, consummated a trade whereby their company became the purchaser of the mill of the Schutte Lumber Company at Helena. They went to the office of the attorney of the vendor to have the property sold transferred to the Box Company, and also to secure the payment of the notes evidencing the deferred payments; the sale having been partly on a credit. When they reached there, they stated to the attorney the terms of the trade, and he decided that it would be best to vest the title in a representative of the Box Company, and that he could afterwards transfer it to the company. This was done

because the Box Company was a foreign corporation, and because, if the title was in it, there would be delay and difficulty in obtaining a mortgage securing the deferred payments. The result of the advice of the attorney was that the title to the property was vested in Kaiser, and the Box Company advanced to him $2,000 to make the cash payment, and Kaiser was charged by the Box Company with this amount. The Kaiser Lumber Company was then organized under the laws of this state, and the property was transferred to it, and the $2,000 were charged against it.

At the time the Lumber Company was organized, R. J. Kaiser, C. W. Ohrndorf, E. L. Lange, and Charles Schutte, were its shareholders, and R. J. Kaiser, C. W. Ohrndorf, L. K. Loy, Gus Gunlach, and Louis Schilling were the stockholders of the Box Company. R. J. Kaiser, C. W. Ohrndorf and E. L. Lange constituted the board of directors of the former company, and R. J. Kaiser, C. W. Ohrndorf, and L. K. Loy composed the directory of the latter; and Kaiser was president of both. Ohrndorf and Kaiser owned a majority of the stock in each of the two companies.

The Box Company never claimed the mill Kaiser purchased of the Schutte Lumber Company. By agreement nearly all the lumber manufactured by the Lumber Company was shipped to and taken by the Box Company, and paid for by it according to the market value thereof. On the 25th of August, 1896, the former was indebted to the latter in a large sum of money on account of advances made on lumber. On that day the latter instructed its president, Kaiser, "to go to Helena, Ark., and have about 3,000,-000 feet of lumber marked and set aside for" its use, and to cause "the same to be shipped in at the rate of from two to four cars per day until enough lumber" was "shipped to liquidate all indebtedness." On the 10th of October following the former executed to the latter its notes for the larger portion of its indebtedness. From the organization of the Lumber Company, and so long as the Box Company thereafter continued in business, the two companies kept accounts of their dealings with each other as separate and distinct organizations, and they continued to deal with each other as separate organizations until the former became indebted to the latter in the sum of $53,508.83, as found by the circuit court.

Insolvency was the end of the business career of both companies. On the 27th of January, 1897, the Box Company conveyed all its property to the appellant in trust to secure its creditors; and on the 5th of February following creditors of the Lumber Com-

pany instituted proceedings against it for the winding up of its affairs. On the 8th of the same month a receiver was appointed to take possession of its assets. The controversy in this proceeding is between these representatives of the creditors of the two corporations. The trustee presented his claim against the estate in the hands of the receiver, and was denied the right to participate in the assets of the Lumber Company to the detriment of its other creditors.

The receiver contends that the Box Company and Lumber Company are "in truth and in fact one and the same being, the latter being the offspring of the former, organized in this state for the benefit of the parent company; and that the mill at Helena was owned by the former, was purchased for its benefit, and whatever was owing for advances by the former to the latter was an indebtedness due to itself from itself; and that it would, therefore, be inequitable to apply the assets in his hands to the payment of this debt until other creditors of the Lumber Company are satisfied."

If the contention of the receiver be correct, the action at bar is without foundation. It was based upon the theory that the Lumber Company was an independent organization, and that the mill purchased at Helena was its property. If the contention is true, the assets held by the Lumber Company are the property of the Box Company; and the latter is liable to the alleged creditors of the former for their claims.

In supporting his contention the receiver lays much stress upon the fact that the two corporations were practically under the control of the same persons, Kaiser and Ohrndorf being directors and officers, and the owners of the large majority of the stock, in each company. But this fact does not prove that the two companies were in fact one corporation, and that the trustee, the appellant, was not a creditor of the Lumber Company. A corporation is an artificial being, separate and distinct from its agents, officers, and stockholders. Its dealings with another corporation, although it may be composed in part of persons who own the majority of the stock in each company, and may be managed by the same officers, if they be in good faith and free from fraud, stand upon the same basis, and affect it and the other corporation in the same manner. and to the same extent, that they would if each had been composed of different stockholders and controlled by different officers. In such cases, however, the utmost good faith as to the minority of the stockholders is required. The owners of such majority cannot,

as directors or otherwise, lawfully manage the affairs of one of the corporations in the interest of the other to the detriment of the former, because in their control and management of the corporations, in respect to the minority of each company, they stand in much the same attitude that the directors maintain to all the stockholders; and they are required to exercise the same good faith as to creditors as is required of stockholders of a corporation dealing with another in which they have no stock. *Farmers' Loan & Trust Co.* v. *New York & N. R. Co.,* 150 N. Y. 410, 430; 2 Cook, Corporations (4th Ed.), § 662.

In the case before us the evidence shows that the two companies were independent organizations; that they dealt with each other as such; and that the mill at Helena never was claimed by any party other than the Lumber Company, after its organization. It fails to show that the Lumber Company was managed in the interest of the Box Company, but does show that both companies became insolvent about the same time. It shows that the Box Company purchased the product of the Lumber Company, and paid for it its market value. If either company was managed for the benefit of the other, the result shows that it was the Box Company; for their business relations closed with the Lumber Company largely indebted to the Box Company for advances made on lumber to be manufactured.

As evidence to show that the Lumber Company was managed for the benefit of the Box Company, the receiver in this case says that Kaiser reported to the Box Company that the mill at Helena was working well, and would soon ship lumber daily. This was natural and right. At that time the Lumber Company was indebted to the Box Company, and the latter company intended to purchase its lumber from the former. He also says that the books of the former company were actually kept in St. Louis, and that, too, by a bookkeeper, one-half of whose salary was paid by the latter. If so, he was furnished with the information by the former company which enabled him to do so, and he rendered the latter service at the same time. He further says that the account upon which the transaction between the two companies were recorded by the former company, was headed "Standard Eagle Box Company—Kaiser Lumber Company." This proves nothing. The account following shows that they were dealing with each other as separate companies.

After a careful consideration of all the evidence, our conclusion is that so much of the decree of the court below as postpones the payment of appellant's claim until all other claims are paid should be reversed, and that he should be allowed to participate proportionately with other creditors of the Lumber Company in the distribution of its assets; and it is so ordered.