FORT SMITH LIGHT & TRACTION, COMPANY v. KELLEY.

Opinion delivered March 21, 1910.

1. CORPORATIONS—IDENTITY.—The fact that some of the stockholders and officers in one corporation were stockholders and officers in another corporation did not establish the identity of the corporations, nor make the acts of one the acts of the other. (Page 469.)

2. CONTRACTS—CONSTRUCTION—EVIDENCE.—Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place them-

selves in the same situation as. the parties who made the contract, so as to view the circumstances as they viewed them, in order to ascertain the intention of the parties from the language used.  (Page 471.)

3.   SAME—CONSTRUCTION AS A WHOLE.—A contract should be construed as a whole, all of its parts being considered in order to determine the meaning of any particular part.  (Page 471.)

4.   GAS—ASSIGNABILITY OF FRANCHISE.—The grantee of a franchise for supplying gas to a city, with the city's consent, may assign the franchise to another; and a grant to a company or its assigns is an authority for an assignment without further action by the city.  (Page 473.)

5.   CONTRACTS—RESTRAINT OF TRADE.—A contract whereby one who undertakes to furnish natural gas for use of the public agrees to compete with others in the price of such commodity is not in restraint of trade.  (Page 474.)

6.   SAME—VALIDITY OF PARTIAL RESTRAINT.—A contract whereby a person agrees not to supply natural gas in a certain city is only in partial restraint of trade, and is therefore not void.  (Page 475.)

7.   GAS—COMBINATION TO FIX PRICE—MONOPOLY.—An agreement by a company having a franchise to supply gas to the consumers in a certain city to purchase natural gas from another company at certain fixed prices is not a combination to fix the price of such gas within the prohibition of the anti-trust act of 1905.  (Page 476.)

8.   CONTRACT—RESTRAINT OF TRADE—DIVISIBILITY.—Where an agreement contains a stipulation which is capable of being construed divisibly, and one part is void as being in restraint of trade while the other is not, the court will give effect to the latter, and will not hold the agreement to be void altogether.  (Page 477.)

9.   INJUNCTION—ADEQUACY OF REMEDY AT LAW.—Injunction will lie to prevent the assignor of an exclusive franchise for supplying natural gas in a city from interfering with the assignee's enjoyment of such franchise, the remedy of damages at law being inadequate.  (Page 477.)

Appeal from Sebastian Chancery Court; *J. V. Bourland,* Chancellor; reversed.

### STATEMENT BY THE COURT.

On the 21st day of December, 1903, the city of Fort Smith, by ordinance No. 634, granted to Harry E. Kelley and *"assigns"* a franchise for furnishing natural gas to the inhabitants of the city for a period of fifty years.  The Mansfield Gas Company, a corporation, owned natural gas wells in the vicinity of Fort Smith and a plant or system of mains and pipes for operating same in the city.  Kelley owned ninety-five per cent. of its stock.

The Fort Smith Light & Traction Company, a corporation, had the power under its charter to generate, produce and *fur-*

*nish gas* and electricity for lighting, heating, power and domestic uses, and to furnish same to public or private consumers in the city of Fort Smith and suburbs.  It also had the power to buy and sell gas, and "to do a general merchandise business in electrical and gas appliances, supplies, fixtures and inventions; to install the same; and to do all things incident to or connected with any of the aforesaid purposes which might further and aid the purposes and objects aforesaid."   In pursuance of these powers, the Fort Smith Light & Traction Company was maintaining and operating an electric light and power plant in Fort Smith; also an artificial gas plant and a system of mains and pipes for its distribution.

On December 23, 1904, Kelley and the Mansfield Gas Company, appellees, entered into a contract with the Fort Smith Light & Traction Company, appellant, "for the purpose," as the contract declares, "of selling natural gas to consumers in the city of Fort Smith, Arkansas, under the franchises granted in ordinance No. 634."   This contract provides among other things that, "in consideration of the terms, conditions and agreements" set forth, the appellees are to supply natural gas to appellant "for and during the period of forty-nine years" within the corporate limits of the city of Fort Smith and its suburbs, "to be sold and disposed of" by appellant in the territory mentioned.   It further provides that appellant *"shall have the exclusive right to sell and dispose of said natural gas and to distribute the same within the limits aforesaid."*

The contract provides that appellant shall use its system of mains and pipes in said city and the pipes of appellees already laid in said city, and that appellees at their own expense should make such additions to their mains and pipes in the city of Fort Smith and suburbs as the demand for natural gas should warrant.   The contract gave to appellees the power to control the prices of natural gas to the consumers for all purposes except for illumination.   For the latter purpose the appellant had the right to fix the rate at one dollar per thousand cubic feet.   Under the contract appellant agreed to pay appellees for the natural gas from the 1st day of January, 1905, to the 1st day of April, 1905, 25 per cent. of the gross earnings from the sale of it, as determined by meters, and from the 1st day of April, 1905, to

the expiration of the contract 75 per cent. of the gross earnings less 10 per cent. allowed appellant under certain conditions. Appellant was also to pay in nine monthly installments, beginning April 1, 1905, a sum equal to 50 per cent. of the gross earnings (less 10 per cent. under certain conditions) from January 1 to April 1, 1905. "The gross earnings over and above the payments above stipulated" were to be retained by appellant as its compensation.

There was a provision in the contract by which appellant was to purchase of appellees the "distribution system" of the latter at the actual cost of installing same. Apellant was to pay 10 per cent. per annum on the cost of the distribution system (4 per cent. of this being designated "depreciation fund"), the payments to be made monthly and to continue for twenty-five years, if appellee furnish appellant natural gas for that long. But, if the supply of gas failed so that appellees could no longer furnish same, appellant nevertheless was to purchase the distribution system, in that event, by paying the cost thereof "less the sums that had been paid under the 4 per cent. depreciation fund." Thereupon appellant was to have the use of the franchise granted to Harry E. Kelley. (In the contract appellees are "parties of the first part," and appellant is "party of the second part.")

The contract contains these further provisions, towit: "That the party of the second part may contract for and purchase natural gas from other parties or corporations when such parties or corporations will furnish, supply and deliver the same to the party of the second part at lower figures than the said parties of the first part will do, it being agreed, however, that before making any such contract or contracts the party of the second part shall give to said parties of the first part an opportunity to meet such prices. If said parties of the first part shall refuse to meet such prices as can be contracted for with other parties or corporations, and said second party shall have contracted with such other parties or corporations, the said parties of the first part shall have the right, by making a lower price, to reinstate the use of their natural gas under this contract.

"If the said second party shall contract for natural gas from other parties or corporations in conformity with the foregoing

provisions, the said party of the second part shall have the right to use the aforesaid pipes and distributing system of the said parties of the first part by continuing paying the parties of the first part the six and four per cent. herein provided, and shall have the right to use the franchises granted to the said Harry E. Kelley by the city of Fort Smith, Arkansas, by ordinance No. 634.

"That, whilst the party of the second part has the right to manufacture, produce and sell artificial gas at all times, it shall nevertheless, at any and all times, during the period of this contract use every effort to sell and dispose of the highest maximum quantity of natural gas that shall be furnished, supplied and delivered to it by said parties of the first part."

There is a provision in the contract that appellees "will use due diligence in prosecuting their search for natural gas," and *that both parties agree to use every effort to extend the use of natural gas and to protect and promote the interests of each other over and above the interests of any other party, person or corporation."* The contract contains various other provisions, but the above are all that it is necessary to mention.

In November, 1906, the Arkansas & Territorial Oil & Gas Company had developed a gas field near the city of Fort Smith which was sufficient to supply that city with natural gas. This company was a West Virginia corporation, but doing business in this State. We will, for convenience, hereafter refer to it as the "Arkansas Company." This company offered to supply appellant gas at "lower figures" than appellees were doing. Appellant, pursuant to its contract, notified appellees in writing of the terms and prices of the Arkansas Company, and appellees in writing refused to meet the terms of the Arkansas Company. Whereupon, on the 6th day of November, 1906, appellant entered into a contract with the Arkansas Company by which the latter agreed to furnish appellant natural gas for a period of five years from the 6th day of March, 1907, (unless the supply was sooner exhausted) for use within the corporate limits of the city of Fort Smith and Van Buren, Arkansas, to be sold and disposed of by appellant at rates to be fixed by it, but at not less than the following net prices:  For illuminating purposes, $1.00 per thousand cubic feet, etc., then follow the minimum prices

for other purposes. The contract made with the Arkansas Company contained a similar provision to that made with appellees reserving to appellant the right to contract with others offering betters terms, *i. e.,* gas at "lower figures."

The appellant and appellees agreed that the exchange of gas supplies should be effected in such manner as to cause as little interruption as possible to the service, and accordingly the transfer from appellees' pipes to the pipes of the Arkansas Company was made January 23, 1907. The employees of appellant and of the appellees and the Arkansas Company assisted in making the transfer. Kelley, however, for appellees, gave appellant to understand that it was violating the contract, that he wanted the contract carried out, and that if appellant violated the contract it did so at its peril. After the contract between appellant and the Arkansas Company was entered into, the appellees were preparing to furnish gas to the inhabitants of the city of Fort Smith under the rights conferred, as they claimed, by ordinance No. 634, granting the franchise to Kelley. They had bought and laid pipes, dug ditches, put notices in the paper that they were in the "natural gas business," and advising the people not to make contracts for their gas supply until they had seen the Mansfield Gas Company. They had proceeded, and were proceeding, to make contracts for supplying natural gas. Thereupon appellant brought this suit for temporary restraining order and, upon final hearing, for perpetual injunction against appellees. There was an answer by appellees, a cross complaint by Kelley and an answer thereto by appellant, all raising the issue as to whether appellees could proceed to furnish natural gas to the inhabitants of the city of Fort Smith under the franchise granted to Harrey E. Kelley. The testimony is voluminous. Any other facts found necessary will be stated in the opinion. The court dismissed the complaint and the cross complaint, and the parties have appealed.

*Rose, Hemingway, Cantrell & Loughborough, Moore, Smith & Moore, Flynn & Ames, James A. Cummins,* and *Hill, Brizzolara & Fitzhugh,* for appellant.

1. The franchise was granted to "Harry E. Kelley, his heirs, associates, successors, assigns or trustees," and was as-

signable. 177 U. S. 573; Thornton on Oil & Gas, § 477; 114 U. S. 501; 102 Mo. 472; 14 S. W. 974; 15 S. W. 383; 117 Cal. 168; 171 Mass. 243; 73 Fed. 956; 139 Fed. 660. The contract between appellees and appellant is clearly an assignment, granting to appellant during the life of the contract the right to "exercise and enjoy all the rights and privileges conferred by" the franchise ordinance. A franchise cannot be split up, and the owner cannot assign it and still retain it for his own use. 28 La. Ann. 483.

2. The contract is not in restraint of trade. It is not only not such a contract as tends to stifle competition and enhance the prices of commodities to the consumer, but by its terms it favors competition and guards the interests of the consumers, while not excluding appellees from the privilege of meeting the lower prices proposed by other companies and thereby reinstating the use of appellees' gas. As between appellant, a mere distributor of natural gas, and appellees, producers thereof, competition is impossible. There is competition between appellees and the Arkansas Company, but when appellees offer to sell gas at a lower price than their competitor, then appellant is bound to sell their gas exclusively. If there is a partial restraint of trade, it is confined to the limits of a single town, and is not unlawful. 48 Ark. 146; 62 Ark. 101; 172 U. S. 11; 186 Pa. St. 443; 40 Atl. 1000; 84 Ky. 180; 29 N. J. Eq. 242; 39 N. J. Eq. 367; 210 Pa. 288; 59 Atl. 1088; 31 Mich. 490; 86 Ill. 246; 7 Biss. 367; 29 Fed. Cas. 791; 73 Mo. 390; 33 Ia. 424; 171 Pa. St. 284; 136 N. Y. 333; 163 Pa. St. 62; 41 Wis. 172; 78 Ill. 589; 139 Fed. 533; 177 Mo. 599; 139 U. S. 80; 199 U. S. 279; 106 N. Y. 486; 21 Wend. 157; 20 Wall. 64, 69; 9 Cyc. 539.

3. There is no merit in the contention that the object of the clause in the contract granting to appellant the privilege of charging $1.00 per 1,000 cubic feet of gas was to stifle competition between natural gas and the electricity which appellant produced; but, if such objection were well taken, the contract is severable, and that clause could be stricken out, and the rest of the contract would stand. A contract in restraint of trade will be set aside only in so far as it offends against public policy.

106 N. Y. 484; 210 .Pa. St. 288; 20 Wall. 69; 139 U. S. 91; 106 Cal. 332; 126 Cal. 176; 102 Mass. 480; 113 Pa. St. 579.

4. The contract cannot be void, because the city has the power to regulate the price of gas. Kirby's Dig., § 5445 *et seq.;* 84 N. E. 101, 102.

· 5. Under its charter appellant is authorized "to generate, *produce* and *furnish* gas for lighting, heating, power and domestic uses," etc., which is broad enough to authorize the distribution of *natural* gas. The contract is, therefore, not *ultra vires.* 71 Ark. 158; 75 Kan. 572; 89 Pac. 1039; 182 Pa. St. 309; 37 Atl. 932; 118 Pa. St. 468; 110 Tenn. 187; Am. Dig. (yr. 1899) col. 2029; Am. Dig. 1901a, col. 2163; *Id.* col. 1936.

6. By their acceptance of benefits under the contracts, *i. e.,* 6 per cent. on the cost of the distribution plant and 4 per cent. for depreciation, paid in monthly intallments according to the contract and regularly received and accepted by appellees, they are estopped to ask that the contract be set aside. 47 Ark. 320; 50 Ark. 201; 53 Ark. 514; 59 Ark. 251; 62 Ark. 278; 77 Ark. 129; *Id.* 109; 74 Ark. 190; *Id.* 377.

7. Appellant did not cause the Arkansas Company to be organized, notwithstanding a few of the stockholders of appellant company are also stockholders in the Arkansas Company. Ownership of stock in one corporation does not deprive one of the right to own stock in another.

8. Kelley's cross-bill cannot be maintained because, if the contract is in unlawful restraint of trade, he is *in pari delicto* with appellant. 53 Ark. 147; 63 Ark. 319; 80 Ark. 65; 197 U. S. 245; Pingree on Extraordinary Contracts, § 322.

*Youmans & Youmans* and *Mechem & Mechem,* for appellees.

Their argument is stated in the opinion. No authorities are cited in support of points 1, 2, 3 and 5. In support of point 4 they cite 130 U. S. 396; 153 Ind. 483; 121 Ill. 530; 83 Tex. 650; 48 So. 19; 41 S. E. 553; 87 N. E. 823; 55 N. E. 577; 74 Am. St. Rep. 268, note; 70 Atl. 1; 69 Kan. 285; 22 W. Va. 617; 119 N. Y. 50; 31 So. 961; 116 S. W. 1045, 1046; 89 Tex. 403; 83 Ia. 156; 79 Ill. 346; 37 S. E. 476; 50 S. E. 876; 56 S. E. 264; 139 N. Y. 250; 145 N. Y. 267; 161 Pa. 473; 116 Am. St. 916; 140 Mich. 548; 89 Tex. 394; 171 Ala. 562. In support of point 6, they

cite 40 Ark. 83; 57 N. E. 822; 25 Conn. 19; 51 N. J. Eq. 379; 48
N. J. Eq. 332; 35 Barb. 364; 50 *Id.* 289; 56 N. E. 963; 16 L. R. A.
752; 14 N. Y. 528; 138 *Id.* 359; 55 Kan. 173.   Point 7:  33 Ark.
638; 56 Am. St. Rep. 271; 44 N. J. Eq. 427.

WOOD, J., (after stating the facts).   Appellees urge affirm-
ance upon certain grounds which we will consider in the order
presented by counsel.

1. *"That plaintiff violated the contract in organizing a
competitor in the production and sale of gas and bringing it into
this field to compete with defendants, in disregard of the con-
tract which provides that both parties will 'promote and protect
the interests of each other and above those of any other person or
corporation.'"*

H. M. Byllesby was president of H. M. Byllesby & Company,
a New Jersey corporation.   Its business was that of engineering,
promoting, developing and managing various industrial and me-
chanical enterprises in different sections of the country, which
had reference particularly to the supply of natural oil and gas.
Byllesby was vice president of appellant, Arthur S. Huey was
president of appellant and also vice president of H. M. Byllesby
& Company.   The relation that H. M. Byllesby & Company sus-
tained to appellant is explained by H. M. Byllesby & Company as
follows:  "We are employed by the Fort Smith Light & Trac-
tion Company, as we are by some other ten other public service
corporations, as their engineers and managers.   In this capacity
we take general charge of their engineering matters and of the
management of their business, acting in that capacity by appoint-
ment of their board of directors, reporting to them at their meet-
ings, receiving our authorization from them from time to time
for our duties as above described as engineers and managers.
The company has its regular local manager who carries out the
detail management of the company's affairs under our general
directions, we in turn acting as above described under the direc-
tion of the board of directors of the company.

Witnesses on behalf of appellees testified that the contract
between appellant and appellees was dictated on the part of appel-
lant by its vice-president, H. M. Byllesby.   They say he carried on
the negotiations on behalf of appellant pertaining to that contract,
and such communications as were had between appellant and

appellees concerning the contract that was made by appellant with the Arkansas Company. One of the witnesses said H. M. Byllesby "was the whole thing," so far as appellant was concerned in making the contracts as to the supply of gas. The testimony shows conclusively that H. M. Byllesby & Company were instrumental in organizing the Arkansas Company. Counsel for appellees contend that the general officers and managers of appellant, who are also general officers and managers of H. M. Byllesby & Company, brought into existence the Arkansas Company for the purpose of furnishing gas to appellant at a lower price than prevailed under the contract with appellees. If it be conceded that Byllesby, vice-president of appellant, dictated the present contract on appellant's part with appellees, still that does not warrant the conclusion that appellant organized the Arkansas Company to compete with the appellees; nor is such conclusion justified by reason of the fact that the general officers and managers of appellant were also general officers and managers of H. M. Byllesby & Company. There is no evidence to sustain appellees' contention. The undisputed evidence is that the organization of the Arkansas Company was never discussed with the directors of appellant; that neither its directors nor any of its agents or officers ever offered any inducements to the Arkansas Company to come into the gas field near Fort Smith for the purpose of avoiding the contract between appellant and appellees; that appellant's directors, officers and agents "were in entire ignorance of the personnel of the Arkansas Company, and had no knowledge of what their intentions were until the Arkansas Company through its officers submitted" to appellant "a proposition for furnishing gas;" that appellant "never had any interest in the Arkansas Company other than its contract with it for the distribution of natural gas." The evidence shows that these three corporations: appellant, Mansfield Gas Company, and H. M. Byllesby & Company, were entirely separate and independent corporations. Appellant had a total of one hundred and nine share holders, and of these only seventeen also had stock in the Arkansas Company. There were many stockholders in the Arkansas Company who were not stockholders in either appellant or H. M. Byllesby & Company, and also in H. M. Byllesby & Company that had no stock in the

other corporations. The fact that some of the stockholders in one company had also stock in each of the other companies, and the fact that the general managers and officers of one company were also general managers and officers of another company, did not make these companies the same corporation, nor the acts of one the acts of the other. *Lange* v. *Burke,* 69 Ark. 85. Our conclusion of fact, therefore, is that appellant did not organize the Arkansas Company.

.But, even if appellant did organize the Arkansas Company, and for the purpose of causing appellees to lower the price of gas, as a matter of law that would not have been a breach of that provision of the contract which prescribes "that both parties will promote and protect the interests of each other over and above those of any other person or corporation." This court said in *Wood* v. *Kelsey,* 90 Ark. 272: "Courts may acquaint themselves with the persons and circumstances that are the subject of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them," in order to ascertain the intention of the parties from the language used. The contract must be construed as a whole, all its parts being considered in order to determine the meaning of any particular part as well as of the whole."

Now, this provision of the contract had reference to the mutual protection of the parties in matters where their common interests conflicted with that of some third party. It did not mean that each party would not be allowed to promote and protect his own interest when such interest conflicted with that of the other party to the contract. It could not have had reference to the lowering of the price of gas to appellant, for other provisions of the contract specifically provided for that, and it was appellant's duty as a public service corporation to furnish gas to the inhabitants of the city whose franchise it held, as cheaply as it could be obtained by the legitimate prosecution of its business. Appellant and appellees must have known that they could not enter into a contract that would be contrary to the public interests. The supplying of gas under the ordinance was a matter of public concern, and in contracting with each other they had to consider what would be for the benefit

of the public.  *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650.

Appellant could not furnish the cheapest gas to the public if its contract with appellees compelled it to pay the highest price.  Although the contract provided that the price of gas to appellant should be lowered "if other parties or corporations should furnish it at a lower price," yet Kelley's own evidence shows that he thought his company had the only gas field in the vicinity of Fort Smith.  He says: "At that time the only other field was 160 miles away.  In the fall of 1904 there was no reasonable certainty upon which men could have counted as a business proposition that the gas would be found which has since been brought to Fort Smith."  So it is plain that Kelley did not have in mind that there would be any competition to his gas supply from any source.

2.  *"It violated the contract in refusing to receive and distribute defendant's gas, when it could not purchase gas more cheaply of others than defendants, within the proper construction of said provision."*

Appellees contend that, before appellant could avail itself of a contract with another person or corporation to furnish cheaper gas, such contract would have to cover the same period of time, and embrace only the territory mentioned in the contract with appellees.  The parties might have "so nominated" in the contract, but they have not done so.  The provision is:  "That the party of the second part may contract for and purchase natural gas from other parties or corporations when such parties or corporations will furnish, supply and deliver the same to the party of the second part at lower figures than the said parties of the first part will do."  The provision is for the benefit of appellant. It was clearly for the benefit of appellant to obtain gas at the rates agreed upon in its contract with the Arkansas Company. True, this would perhaps lead to disastrous consequences to appellees if they failed "to meet such prices."  But that is not the concern of courts.  The parties have made their contract, and it must be given the meaning its plain language imports.  Appellees would not have to abandon the field and suffer confiscation of their plant and income when an onslaught is made upon their prices, or else "take their gas elsewhere," as suggested by

counsel.  A sovereign preventative of any such ruinous results to appellees is found in that provision of the contract which reads: "If said second party (appellant) shall have contracted with such other parties or corporations, the said parties of the first part (appellees) shall have the right, by making a lower price, to reinstate their natural gas under this contract."  So long as appellees had this remedy in their hands, it would be impossible for appellant and any rival natural gas supply company or person to displace or supplant them.

3.  *"The contract does not exclude defendants from selling their gas in Fort Smith, after plaintiff has ceased to receive it from them."*

Kelley assigned his rights under the ordinance to appellant. "The city or town may agree that the grant may be assigned, and a grant to the company or its assigns is sufficient to authorize an assignment without the further consent of the city."  Thornton on Oil and Gas, § 477; *Los Angeles* v. *Los Angeles City Water Co.,* 177 U. S. 573; *Chadwick* v. *Old Colony Rd.,* 171 Mass. 243; *New Orleans, &c., R. Co.* v. *Delamore,* 114 U. S. 501.

The contract provides that "the party of the second part (appellant) *shall, during the life of the contract, exercise and enjoy all the rights and privileges conferred by ordinance No. 634 of the city of Fort Smith, Arkansas."*  The life of the contract for the supply of gas was forty-nine years.  It provided that "the party of the second part (appellant) *shall have the exclusive right to sell and dispose of said natural gas and distribute the same within the limits aforesaid,"* i. e., in the city of Fort Smith and suburbs.  "All the rights and privileges" under ordinance No. 634 could not, under the terms of assignment provided by the contract, be enjoyed by both appellant and appellees at one and the same time.  The franchise granted by the ordinance was not susceptible of numerous multiplications and divisions through the process of assignment by one to another, and leaving the assignor to enjoy equally with the assignee the rights and privileges of the franchise assigned.  The right to create franchises is in the city, and not in the one to whom it gives the franchise. The grantee of a franchise, if same is assignable, may transfer what he has to another, but he cannot create a new franchise. *State* v. *Morgan,* 28 La. Ann. 483.

The grantee of the franchise, by assigning the same, transferred to his assignee *all the rights he had under his grant.* Such is the effect of an assignment of a franchise, and such was the effect of the contract by which the assignment was made in this case. The language is clear and unmistakable. Appellant has the *exclusive* right to sell and dispose of the said natural gas, and distribute same, and is to "exercise and enjoy *all the rights and privileges* conferred by ordinance No. 634." This language construes itself. Appellant could not enjoy the *"exclusive right"* and have *"all the rights and privileges,"* if appellees also had enjoyed those rights and privileges. That would be a contradiction of the language of the contract, and would destroy its meaning.

The fatal mistake of appellees was in concluding that the contract with appellant, granting it the exclusive right to supply natural gas under ordinance No. 634, terminated when appellees refused to meet the *lower prices* offered by the Arkansas Company. True, appellees were not compelled to meet these prices; but they could not, by refusing to meet them, recall the assignment and re-invest themselves, so to speak, with the rights and privileges granted to Kelley by the ordinance.

The effect of the contract assigning the franchise to appellant was to give to appellant the exclusive right to distribute gas in the city of Fort Smith and suburbs. It would be a breach of the contract for appellees during the life of the contract, to procure another ordinance from the city and to attempt to distribute gas under that. From such violation of the letter and spirit of the contract equity will perpetually enjoin appellees.

4. *"If the contract did undertake to exclude defendants from Fort Smith for forty-nine years, it would be a restraint of trade and competition, against public law and policy, and unenforceable."*

The contract is not one in restraint of trade. It does not restrain appellees from supplying natural gas to the city of Fort Smith under the ordinance No. 634, so long as they are willing to meet a "downward revision" of the prices of natural gas. The law prohibiting contracts in restraint of trade does not prevent one from making a contract by which he agrees to compete with others in the price of the commodity which he produces for the use of the public. One purpose of the law in pro-

hibiting contracts in restraint of trade is to encourage competition and thereby lower the prices of services and commodities to the public. Appellees contend that by this contract the price of natural gas is not reduced, so far as the consumer is concerned. But that is its inevitable tendency, and, indeed, was its effect in this case. The price of gas to the consumer has been greatly reduced since appellant entered into the contract with the Arkansas Company. Appellant could never lower the price of gas to the consumer unless by the terms of the contract it had the right to purchase gas at a lower rate than was fixed by appellees. That is precisely the right that appellant has by the terms of this contract, whenever appellees failed to meet the lower prices of some other person or corporation.

It was impossible for the consumer to be oppressed by a monopoly in the price of natural gas under the terms of this contract, for by its terms appellant's pipes were open to every producer who applied for admission at a *lower rate*. The necessary result of this was to bring down the price of gas to the consumer to the lowest possible price at which it could be supplied to the inhabitants of Fort Smith on a remunerative basis to the appellant. It would be difficult to conceive and to write down a more excellent and beneficial plan than that by which the inhabitants of Fort Smith were furnished natural gas.

Since, under our construction of this contract, there was no restraint of trade and no monopoly created injurious to the rights of the public, the cases cited in the brief of counsel for appellees, where there were contracts in restraint of trade or creating monopolies. are not in point, and we need not review them here. No authority can be found, we believe, construing a contract similar to this one as against public policy and void. For, as we have shown, by this contract the interest of the public is subserved by the most effectual provision that the ingenuity of the parties and their draftsmen could have devised.

But, should we be mistaken in holding that the contract is not one in restraint of trade, then we are of the opinion that, at most, it could only be a contract in partial restraint of trade. Under all the authorities, and our own decisions, such contracts, when reasonable, are not against public policy, and therefore are not void. *Keith* v. *Herschberg Optical Co.,* 48 Ark. 146; *Web-*

*ster* v. *Williams,* 62 Ark. 101.  See numerous authorities cited in appellant's brief.  If appellees, by not meeting the lower prices, were compelled to take their gas elsewhere, this they might have done for aught that appears to the contrary, and the burden was on them, from this viewpoint, to show that the contract was unreasonable.

5.  *"The contract as to gas was absolutely void under the anti-trust act of 1905 because it was a combination to fix the price of natural gas."*

The contract did not violate the anti-trust law of 1905. There was no combination between appellant and appellees to fix the price of natural gas to the consumer except for illumination. Appellees had the fixing of the price of gas before they entered into the contract with appellant, and they have it still, as long as they meet the lower prices, as to gas for all purposes except for illumination.  The price of gas for illumination was fixed by the contract at a certain figure.  But appellees under the contract had the right to fix the price, according to the schedule specified by them, only so long as there was no competitor in the field "beating down" the price.  When natural gas was offered appellant at a reduced price, then appellees had to meet these reduced prices.  If they had complied with these conditions, they still would have had the right to fix the price.  The agreement on the part of Kelley was to sell to appellant his franchise and on the part of the gas company to sell its gas.  The agreement on the part of appellant was to buy the franchise, the distributing system, and the natural gas, upon the terms expressed in the contract, and to pay for same out of the proceeds of sales made by appellant to consumers.  The contract is unique in its provisions as to the sale.  But it is nevertheless a contract of sale.

The anti-trust law of 1905 was to prevent a combination among producing competitors to fix the prices to the detriment of consumers.  There was no competition here, as shown by appellee Kelley and the undisputed evidence, between appellant and appellees in the supply of natural gas.  Appellant had no natural gas, and the contract was concerning natural gas.  The artificial gas that was then being supplied by appellant could not,

by reason of the difference in the cost of producing it, be brought into competition with natural gas.

We find no elements of an unlawful combination to fix the price of natural gas. While the price of natural gas for illumination was fixed at a certain sum named, the evidence hardly warrants the conclusion that this was done for the purpose of stifling competition between natural gas and electricity, as appellees contend. But if they are right in their contention, this clause does not render the whole contract void. It is easily severable, and may be eliminated, leaving the contract in other respects valid. In *Oregon Steam Navigation Co.* v. *Winsor,* 20 Wall. 64, 70, the court says: "It is laid down by Chitty as the result of the cases, and his authorities support the statement, 'that agreements in restraint of trade, whether under seal or not, are divisible; and, accordingly, it has been held that when such an agreement contains a stipulation which is capable of being construed divisibly, and one part is void as being in restraint of trade, whilst the other is not, the court will give effect to the latter, and it will not hold the agreement to be void altogether.' "

The same rule applies here. See other cases cited in appellant's brief on the divisibility of contracts.

6. *"The laying of pipes and mains in the streets of Fort Smith, though done without authority of the city, will not be enjoined upon the application of one who does not suffer any injury different from that suffered by all others."*

The laying of pipes and mains in the streets of Fort Smith by appellees for the purpose of supplying natural gas to the inhabitants of the city is a breach of their contract with appellant granting the latter the exclusive right to supply natural gas, and, of course, by such breach appellant suffers injury, and is damaged in a manner that is peculiar to itself, and is not shared in by the inhabitants of the city. The doctrine of the law of injunction as to nuisances, invoked by appellees, is not applicable here.

7. *"If, however, the laying of pipes and mains in the streets could be challenged by plaintiff, it could obtain no relief here, as the remedy at law would be complete, no showing of irreparable injury to plaintiff or insolvency of defendants being made."*

That courts of chancery will grant relief by injunction to

prevent a breach of contract in partial restraint of trade is well settled. *Webster* v. *Williams,* 62 Ark. 101; High on Injunctions, § 1167, and numerous cases in note 1.

"The jurisdiction in cases of this nature is based upon the ground that the parties cannot be placed *in statu quo,* and that damages at law can afford no adequate compensation, the injury being a continuous one and irreparable by the ordinary process of courts of law." High on Injunctions, § 1168.

If equity will enjoin a breach of contracts of this character that are in partial restraint of trade, *a fortiori* will it prevent a breach of such contracts that contain no restraint whatever.

The decree is therefore reversed, and the chancery court is directed to enter a decree in accordance with this opinion, granting the relief prayed for in appellant's complaint and dismissing appellee Kelley's cross complaint for want of equity.

Hart and Frauenthal, JJ., dissent.