## FINN v. GEORGE T. MICKLE LUMBER CO. OF OREGON.

### No. 6066.

Circuit Court of Appeals, Ninth Circuit.
June 9, 1930.

William B. Layton and N. Ray Alber, both of Portland, Or., for appellant.

Harrison G. Platt, Robert Treat Platt, Palmer L. Fales, Isham I. Fales, Arthur D. Platt, George Black, Jr., and Platt, Platt, Fales, Smith & Black, all of Portland, Or., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge.

This is an appeal by a trustee in bankruptcy from an order allowing a claim against the bankrupt estate. George T. Mickle Lumber Company was the claimant and Mickle Mills the bankrupt, and the parties will be so designated throughout this opinion. The case was submitted to the referee in bankruptcy and to the court below on an agreed statement of facts, which may be summarized as follows: The claimant was organized as a corporation, under the laws of the state of Oregon, in the year 1920, and has since been engaged in the business of lumber wholesaler, owning and holding substantial amounts of stock in other lumber and timber corporations as well as in the bankrupt. August 4, 1924, the claimant entered into a contract with the Forest Investment Company for the purchase of the Monarch Mills. The consideration for the purchase was the assumption of two mortgages, aggregating the sum of $300,000, and the payment of $450,000 at the rate of $1 per thousand for each thousand feet of lumber cut in the mill from that time forward, the time of final payment to be thereafter determined and inserted in the transfer. It was stipulated that $750,000 was the value of the Monarch Mills at the time of the purchase. August 8, 1924, the claimant caused the bankrupt to be organized as a corporation, under the laws of Oregon, with an authorized capital of 7,500 shares of no par value, the claimant subscribing for the entire capital stock, save three qualifying shares, and paying therefor the sum of $1,000. Upon the organization of the bankrupt, the contract for the purchase of the Monarch Mills was assigned to it. October 20, 1924, an agreement was entered into between the claimant and the bankrupt wherein the claimant agreed, conditionally, to loan to the bankrupt sums not exceeding in the aggregate $300,000 to aid the bankrupt in the operation of its mill and the production of forest products, such

loans to be for amounts, maturities and renewals, and with such security as the parties might from time to time agree upon. It was further agreed that the bankrupt would sell to, or through, the claimant all of the forest products produced at its mills, and for all such products marketed by the claimant it was to receive the customary commission paid or allowed by producers to wholesalers upon the Pacific Coast. At all times since the organization of the bankrupt, the directors and executive officers of the two corporations have been the same. The claim allowed by the court below was for advances made by the claimant to the bankrupt pursuant to the agreement of October 20, 1924.

Under the foregoing facts the appellant contends that the claimant and the bankrupt were one and the same; that the bankrupt was a mere instrumentality or agent of the claimant, and that the advances made by the claimant to the bankrupt were, in truth and in fact, only a capital investment. This contention cannot be sustained. In Haese v. A. R. Demory Inv. Co., 38 F.(2d) 232, 233, this court said:

"The rule is quite elementary that a corporation is an entity separate and distinct from its stockholders, with separate and distinct rights and liabilities; and this is true even though a single individual may own all, or nearly all, of the capital stock. True, courts, in exceptional cases, will look behind the corporate form in order to redress fraud, protect the rights of third persons, or prevent a palpable injustice; but there is no reason for invoking any such exceptional rule here, because it is not claimed that there was fraud, concealment, or even ignorance of any material fact in the original transaction."

Under quite similar facts in Martin v. Development Co. of America, 240 F. 42, 45, this court said:

"The fact that the Development Company exercised a control over the Copper Company, through its stock ownership or identity of directorate, is to be considered, but by itself is not enough to establish a merger, or to make the Copper Company in its contracts the agent of the Development Company."

In Re Watertown Paper Co., 169 F. 252, 255, the Circuit Court of Appeals for the Second circuit said:

"The affairs of the two corporations were closely intermingled. For some years after the organization of the Pulp Company the Paper Company manufactured its own pulp; but in 1891 and thereafter it procured its supply from the Pulp Company and took

substantially all that it produced. This it made into paper and sold it in the market. The corporations gave each other commercial paper and indorsed for each other. Separate books of account were kept for the two corporations; but the business was conducted from the office of the Paper Company. The Pulp Company had no bank account; all its bills being paid by the Paper Company and charged to its account. All credits of the Pulp Company were collected by the Paper Company and credited to it. A certain proportion of the office expenses was charged to the Pulp Company.

"The case thus presented is one in which the stockholders of two corporations are largely the same, in which both corporations have been under the same management, and in which their affairs have for years been involved and intermingled; and the legal question is whether these relations prevent the one corporation from enforcing against the bankrupt estate of the other a claim which, in case the latter corporation had remained solvent, would have been both valid and enforceable. It must be clearly borne in mind that this is not a case in which a creditor is suing a corporation upon the ground that it has so held itself out in connection with another corporation as, upon principles of estoppel, to render it responsible for a particular debt of the latter. Any legal principle which would prevent the Pulp Company from collecting its claim from the estate of the Paper Company would permit all the creditors of the Paper Company to look to the Pulp Company for the payment of their demands—would, in effect, extend the jurisdiction of the bankruptcy court over the Pulp Company's property.

"Now, it is an elementary and fundamental principle of corporation law that a corporation is an entity separate and distinct from its stockholders and from other corporations with which it may be connected. The fact that the stockholders of two separately chartered corporations are identical, that one owns shares in another, and that they have mutual dealings, will not, as a general rule, merge them into one corporation, or prevent the enforcement against the insolvent estate of the one of an otherwise valid claim of the other. As said by the Supreme Court of Arkansas in Lange v. Burke, 69 Ark. 85, 88, 61 S. W. 165, in holding, in a case where two corporations were practically controlled by the same stockholders and had had intimate business relations, including the employment of the same bookkeeper, that a claim of one corporation would be enforced against the insolvent estate of the other: 'A corporation is an artificial being, separate and distinct from its agents, officers, and stockholders. Its dealings with another corporation, although it may be composed in part of persons who own the majority of the stock in each company, and may be managed by the same officers, if they be in good faith and free from fraud, stand upon the same basis, and affect it and the other corporation in the same manner and to the same extent, that they would if each had been composed of different stockholders and controlled by different officers.' And as said by the Circuit Court of Appeals for the Sixth Circuit in Richmond, etc., Const. Co. v. Richmond, etc., R. Co., 68 F. 105, 108, 15 C. C. A. 289, 34 L. R. A. 625: 'The contract company was a legal corporation, wholly distinct and separate from the railroad company. The fact that the stockholders in each may have been the same persons does not operate to destroy the legal identity of either corporation. Neither does the fact that the one corporation exercised a controlling influence over the other, through the ownership of its stock or through the identity of stockholders, operate to make either the agent of the other, or to merge the two corporations into one.'" See, also, Wheeler v. Smith (C. C. A.) 30 F. (2d) 59.

There is nothing in this case to take it out of the general rule. The fact that the two corporations were at all times under the same management and control requires careful scrutiny for the protection of third persons dealing with them; but fraud cannot be implied from the stipulated facts so long as corporations are permitted by law to organize and conduct their businesses in the manner here disclosed. And, as said by the court in In re Watertown Paper Company, supra:

"It must be clearly borne in mind that this is not a case in which a creditor is suing a corporation upon the ground that it has so held itself out in connection with another corporation as, upon principles of estoppel, to render it responsible for a particular debt of the latter."

The order is affirmed.