### GREEN v. EQUITABLE POWDER MFG. CO.

#### Civ. No. 928.

United States District Court,
W. D. Arkansas, Fort Smith Division.

Jan. 27, 1951.

Gutensohn & Ragon and John E. Harris, all of Fort Smith, Ark., for plaintiff.

Hardin, Barton & Shaw, Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

In an opinion filed November 30, 1950, the court sustained a motion to dismiss the original complaint in so far as any recovery upon warranty was concerned and overruled the motion in so far as alleged liability on account of negligence was concerned.

Green v. Equitable Powder Manufacturing Co., D.C.W.D.Ark., 94 F.Supp. 126.

Thereafter, with the permission of the court, plaintiff filed an amended complaint on December 20, 1950. By the amended complaint, plaintiff seeks to impose the liability of a manufacturer as well as that of a mere dealer upon the defendant, Equitable Powder Manufacturing Company, hereinafter referred to as Equitable. In this regard, plaintiff alleges:

"The defective electric blasting cap causing plaintiff's injury was manufactured by the Western Cartridge Company of East Alton, Illinois, a division of Olin Industries, Inc., a corporation duly and legally organized and existing under and by virtue of the laws of the State of Delaware but not authorized to do business in the State of Arkansas. The defendant is also a subsidiary of the said Olin Industries, having the same employees, directors, officers, and offices as the said Western Cartridge Company and Olin Industries, Inc. In the manufacture, sale and distribution of electrical blasting caps, the said three companies are associated and organized in a single common enterprise with the said Western Cartridge Company manufacturing said caps, the said Olin Industries, Inc., directing and co-ordinating the manufacture and sale of said caps, and the defendant, Equitable Powder Manufacturing Company, selling said caps in the State of Arkansas as well as elsewhere. The said caps are articles of an extremely hazardous and dangerous nature, sold and distributed solely in the State of Arkansas by the defendant as its own product, directing and controlling all advertising and sales endeavors in conjunction with public distribution.

"The said companies are so organized and controlled and their affairs and activities so conducted as to make each the agent of the others and constitute it a mere instrumentality or adjunct in the business enterprise of manufacturing and selling electrical blasting caps, and in reality are all one and the same corporation. The said corporations are so organized as to constitute a wrong and injustice to third persons as well as this plaintiff and as to contravene public policy. As a result thereof, the corporate identity of each has been lost in regard to the plaintiff's injury, and for the purposes herein are to be considered as one and the same legal entity. The defendant, Equitable Powder Manufacturing Company, is therefore liable to this plaintiff for any and all injuries proximately caused by any or all of the acts of negligence and for any and all breaches of implied and express warranties herein alleged resulting from either the manufacture or sale of said defective cap."

Plaintiff reasserts that he is entitled to recover for injuries suffered because of the delayed rather than instantaneous explosion of the dynamite by the allegedly defective dynamite cap upon a warranty theory; that even though the defendant was a dealer only and the merchandise was not sold to the plaintiff but to the plaintiff's employer that defendant should be held liable for the breach of the warranties of fitness of purpose and merchantability; and also for negligence on the allegation that the defendant owed him the duties of a manufacturer as well as of a dealer. In the latter respect the doctrine of res ipsa loquitur is alleged to be applicable.

Defendant has filed a motion to dismiss alleging (1) "under those allegations of the complaint * * * it is not shown or alleged that the three corporations * * * were incorporated and their identities separated for any wrongful purpose, and it is not alleged that by reason of the separate identities of said corporations the plaintiff has been damaged in any manner whatsoever or any wrong done him; or does the amended complaint contain any facts by which it is alleged that either of said corporations has done any act in contravention of public policy, or violated any statutory inhibitions or perpetrated any fraud or committed any wrong"; (2) that the defendant is not liable as the manufacturer for any breach of warranty; (3) that the defendant is not liable as a seller for any breach of warranty; (4) that defendant is not the manufacturer, but in any event the manufacturer is not liable to

plaintiff on negligence theory because there was no privity between manufacturer and plaintiff; (5) that defendant is not liable to plaintiff under any theory of negligence because there* was no privity of contract between plaintiff and defendant; and (6) that the doctrine of res ipsa loquitur has no application to the facts as pleaded in the amended complaint.

■ This motion is before the court for determination, and will be disposed of upon a consideration of the points of defendant's motion in the order set forth therein. The court must proceed under the well established rule "that there is no justification for dismissing a complaint for insufficiency of statement unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim. Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411, 412.

■ As a general rule courts will respect the separate corporate existence of corporations, but there are instances where the ends of justice require that separate existence be disregarded. As expressed in Nichols & Co. v. Secretary of Agriculture, 1 Cir., 131 F.2d 651, 655, quoting from Owl Fumigating Corp. v. California Cyanide Co., 3 Cir., 30 F.2d 812, 813: "When, as against the general rule that two separately incorporated companies are separate and distinct entities, it is charged that one is a mere agency or department of the other and is used as an instrumentality to perpetrate fraud, justify wrong, avoid litigation or render it more difficult, or generally to escape liability for what are in substance its own acts, courts will put aside the screen and, looking upon the situation through the group of negative rules, determine affirmatively the truth and place responsibility where it actually belongs."

■ And, in Darling Stores Corp. v. Young Realty Co., 8 Cir., 121 F.2d 112, 116, the court said: "And courts will ignore the fiction of corporate legal entity when the circumstances justify it, and when it is used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud."

■ The rule is the same in Arkansas. In Rounds & Porter Lbr. Co. v. Burns, 216 Ark. 288, 290, 225 S.W.2d 1, 2, the court, in disregarding corporate entities to fix liability on the controlling corporation, said: "Now of course a parent corporation is not liable for the debts of its subsidiary merely because the parent holds the controlling interest or because the two are managed by the same officers. Lange v. Burke, 69 Ark. 85, 61 S.W. 165; Powell, Parent and Subsidiary Corporations, § 6 (a, b). It is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded."

Disregarding corporate entities is the exception rather than the rule, and the plaintiff must shoulder the burden of establishing facts justifying this action. In attempting to discharge this burden, the plaintiff should bear in mind: "The law which it invoked and applied to the facts is familiar and not open to dispute. It consists of rules which from the nature of the questions to which they apply are in the abstract, and are mainly negative in character. For instance, these rules declare that similarity or identity of corporate names does not alone disturb or bring together distinct corporate entities; that ownership of capital stock of one corporation by another does not alone create identity of interests or the relation of principal and agent between the two; that identity of officers does not alone establish identity of corporations and make one liable for the torts of the other; that the mere loan of money even in large amounts by one corporation to another does not alone make the borrower the agent of the lender or make the lender liable for the acts of the borrower; that participation by the lender in the management of the borrower's business for the purpose of protecting its debts does not make the lender liable for the borrower's debts." Nichols & Co. v. Secretary of Agriculture, supra, 131 F.2d at page 655.

■■ The allegations of identity of the corporate entities are not as explicit as

**132**

they should be and might well be mere conclusions, yet, the court believes that for purposes of a motion to dismiss, the allegations of the amended complaint are sufficient. Regardless of whether these corporations were set up separately to violate statutory inhibitions or to perpetrate a fraud, if they are in fact so controlled and operated "as to make each the agent of the others and constitute it a mere instrumentality or adjunct in the business enterprise of manufacturing and selling electrical blasting caps" the court, in the interest of square dealing and effectuating justice, would be justified in disregarding the corporate existence and fixing responsibility in this case in accordance with the true facts concerning the organization.

Thus, it may well be that on the question of liability the difference between the duties owed by a manufacturer and seller will be extremely important and perhaps even decisive. The importance to the plaintiff of disregarding corporate entities is obvious, because if this cannot be done, he can proceed against Equitable as a seller only. When the manufacturer and seller are in truth and fact one and the same organization, at least in so far as the claim of the plaintiff is concerned, it would be an interference with the public convenience, a wrong and a fraud to deny the plaintiff the right to proceed against the defendant as both seller and manufacturer. It appears that the problem is presented here because Western Cartridge Company may not be subject to service of process in this State. It is no answer to say that plaintiff could go to Illinois to bring his suit, for he has the right to proceed here, where he lives and the explosion occurred, in accordance with the real status of defendant in the organization.

And, even though the facts do not justify disregarding corporate entities, if defendant Equitable put out the caps as its own product, as alleged, it will be subject to the same liability as though it were the actual manufacturer. Chapman Chemical Co. v. Taylor, 215 Ark. 630, 641, 222 S.W.2d 820.

As to points (2) and (3) of the motion to dismiss, the court feels constrained to adhere to the conclusions reached by it on the question of warranty in its opinion heretofore rendered on the motion to dismiss the original complaint. 94 F.Supp. 126. It is bound by the law of Arkansas, and is required to follow the last definite announcement of the Supreme Court of Arkansas that privity of contract is necessary. This proposition is adequately stated in that opinion and need not be repeated here.

The "inherently dangerous" exception asserted by plaintiff does not change the rule in Arkansas which requires privity of contract to maintain a suit on either the implied warranty of fitness of purpose or of merchantability. In the development of the law of liability of manufacturers to remote consumers some courts seized upon the fact that when the merchandise was "inherently dangerous" it was not necessary to have privity of contract to sustain an action for damages based upon negligence. However, the law has now developed to the point where an action for negligence may be maintained without any reference to whether the article was inherently dangerous or not and does not depend upon any contractual relationship whatsoever. See: Annotation, 164 A.L.R. 569; Chapman Chemical Co. v. Taylor, supra. The "inherently dangerous" exception resorted to in negligence cases in no wise modifies or destroys the requirement of privity of contract to maintain a suit on warranty.

Although it appears to the court to be the most desirable result that the warranty be extended to any person whom it may reasonably be expected to use, consume or be affected by the goods, neither the Arkansas Legislature nor the Supreme Court of Arkansas has seen fit to do so, and this court, under this status of the Arkansas law, is not free to do so.

The contentions of defendant in points (4) and (5) have been answered in the discussion of points (2) and (3). The basis of liability in Arkansas for negli-

gence is "foreseeability" rather than privity of contract. Chapman Chemical Co. **v.** Taylor, supra.

Although it is not necessary for purposes of the motion to dismiss, the court feels that a brief discussion of some of the principles that may be involved when the case reaches a trial on the merits may serve a useful purpose. An excellent summary of the governing principles is contained in Restatement of the Law, Torts, §§ 388 to 402, inclusive. It is recognized that the law of the State of Arkansas is controlling, but without an exhaustive review of the Arkansas decisions, the court believes that the law in this State is in substantial compliance with the Restatement, with perhaps one exception. The principles are set forth therein in concise terms and an attempted restatement or summary of them here is unnecessary, but the court does wish to call attention to the difference in the principles governing the liability of a manufacturer and a vendor of chattels. This will become important in the event the evidence discloses that Equitable cannot be charged with a manufacturer's liability, because the facts do not justify the "disregarding of corporate entities" and do not justify a finding that the caps were put out as its own product (Restatement, Torts, § 400).

In addition to the general applicability of Section 388, it is provided in Section 395 that "a manufacturer who fails to exercise reasonable care in the manufacture of a chattel, which, unless carefully made, he should recognize as involving an unreasonable risk * * * is subject to liability for bodily harm caused * * * by its lawful use in a manner and for a purpose for which it is manufactured."

As to vendors, in addition to the provisions of Section 388, the following from Section 401 is applicable, "a vendor of a chattel manufactured by a third person *who has reason to know* that the chattel is, or is likely to be, dangerous when used by a person to whom it is delivered or for whose use it is supplied, or to others whom the vendor should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them." Attention is directed to the words "has reason to know". As stated in Comment (a), "The words 'reason to know' do not impose any duty to ascertain unknown facts, and are to be distinguished from the words 'should know'." And, in Comment (i), "The fact that the defect could have been discovered by the vendor or that a reasonable man would have discovered it is not enough to impose liability under the rule stated in this Section. The important question is what did he know and what would a reasonable man conclude from that knowledge." Also, attention is directed to Comment (k) to the effect that there is no duty not to sell a chattel whose use contains a risk of harm; the duty is normally satisfied when the vendor exercises reasonable care to acquaint the other with the facts known to the vendor. In other words, the vendor having done this would not have reason to know that the chattel is likely to be dangerous when used.

Under Section 402, a vendor who neither knows nor has reason to know that the chattel is or is likely to be dangerous is not subject to liability even though he could have discovered the dangerous character of it by an inspection.

Sections 401 and 402 are revisions of the former text of the Restatement of Torts. See: Restatement of the Law, 1948 Supplement. This may be significant, because former Section 402 apparently imposed a limited duty to inspect by the language "could have discovered it by exercising reasonable care to utilize the peculiar opportunity and competence which as a dealer in such chattels he has or should have". This provision has been quoted, along with the comment thereunder, with approval by the Supreme Court of Arkansas in Ahrens v. Moore, 206 Ark. 1035, 1041, 178 S.W.2d 256. Thus, the proposition as formerly stated in Section 402 might well have to be accepted by this court as the law in Arkansas even though the Restatement has subsequently abandoned as improper any principle placing a duty to inspect on the vendor. However,

134

the court in the Ahrens case, supra, did not have to depend upon any duty of the vendor to inspect in that case, for the facts clearly revealed that the vendor had actual knowledge of the dangerous qualities of the particular article, and with that knowledge made positive representations. Under these facts the same result would be reached under Restatement, Torts, § 401, for the vendor obviously not only had reason to know but actually knew of the defects.

 Also, the court wishes to point out the importance that the difference in liability between a manufacturer and vendor may assume on the question of plaintiff satisfying the burden of establishing negligence, as regards the doctrine of res ipsa loquitur. As expressed by Associate Justice Leflar speaking for the court in Coca-Cola Bottling Co. of Fort Smith v. Hicks, 215 Ark. 803, 807, 223 S.W.2d 762, 765: "The scope of this permissible inference must be carefully limited to exclude cases where the circumstances of the injury do not tend substantially to prove that negligence in the defendant, and in nobody else, caused the plaintiff's injury."

Assuming, but, of course, not deciding, that the case develops into one which justifies the application of the res ipsa doctrine, conceivably a permissible inference of negligence on the part of the manufacturer, that is failure to exercise reasonable care in the manufacture of the chattel, could be drawn from the explosion itself plus the few obvious facts which surround the injury, whereas it would be extremely difficult, if not impossible, for reasonable men to draw a permissible inference of negligence from the explosion itself and obvious facts surrounding the injury on the part of the vendor who did not manufacture the chattel. One could not permissibly infer from the explosion itself that a vendor knew or had reason to know of a dangerous defect.

The above matters are inserted herein merely as a guide to the attorneys, so that the attorneys and the court will be able to proceed with the trial of the case in a manner designed to resolve the real issues of the controversy in accordance with the ends of substantial justice under the facts which may be developed.

As to point (6), the doctrine of res ipsa loquitur may be applicable even though the instrumentality was not in the actual possession of the defendant at the time of the explosion. The nature of the instrumentality may be such that the "control requirement" of res ipsa is satisfied even though defendant had parted with possession. As expressed by the court in Coca-Cola Bottling Co. of Fort Smith v. Hicks, supra: "That requirement (control) appears to have been satisfied when the plaintiff shows, as in the instant case, that there was no opportunity for the content or character of the charged bottle to have been changed from the time it left defendant's hands until it exploded."

■ Whether the res ipsa loquitur doctrine will apply can only be determined as a matter of law after the evidence has been heard.

Thus, from the above, it follows that the motion to dismiss will be overruled except in so far as any allegations of liability due to breach of warranty are concerned, as to which it will be sustained.