## BENNETT *v.* FARABOUGH.

### Opinion delivered June 12, 1922.

1. VENDOR AND PURCHASER—FRAUD—SUFFICIENCY OF EVIDENCE.—In an action to rescind a contract for the sale of a farm because of the alleged misrepresentation of the vendor in regard to a drainage tax, evidence *held* to show that no intentional fraudulent misrepresentation was made concerning the tax, and that the purchaser had full knowledge that the land was subject to assessments for drainage before he signed the contract.

2. VENDOR AND PURCHASER—CONTRACT CONSTRUED.—In a contract to rescind a contract for the sale of a farm, which provided that the purchaser may pay the balance of the purchase money in

cash or assume the incumbrances, that the vendor should submit an abstract showing a "good, clear and merchantable title" and execute a warranty deed when the money was paid in whatever manner, *held,* in view of the evidence, that the parties intended that the vendor should present an abstract showing title that would be merchantable when the liens were satisfied from the proceeds of the sale, and that the contract did not require that the abstract should show that the liens were paid and satisfied before the purchaser was required to pay the price, under reasonable safeguards offered by the vendor for the application of the money.

3. CONTRACTS—CONSTRUCTION.—In the construction of contracts, courts have the right to place themselves in the same situation as the parties, in order to ascertain their intention.

Appeal from Drew Chancery Court; *E. G. Hammock,* Chancellor; reversed.

*Henry & Harris,* for appellants.

1. Appellee has not met the requirements of law with reference to rescission on the ground of fraudulent misrepresentation, as recognized by this court. 47 Ark. 165; 97 *Id.* 268.

Where the means of information is accessible to both parties so that, with prudence or vigilance, the purchaser might rely upon his own judgment, he will be presumed to have done so. 112 Ark. 498.

The proof to establish fraudulent misrepresentations must be clear, satisfactory and convincing. 202 S. W. (Ark.) 720; 200 *Id.* 139; 112 Ark. 498.

Misrepresentation must be of some fact that is material, the moving cause of the transaction. Black on Res. & Can. 169; *Id.* pp. 306-7; 77 Atl. 409; 94 *Id.* 12.

False and fraudulent misrepresentation may be waived by conduct. 90 Atl. 698; 102 Ark. 79; 98 *Id.* 328; 55 *Id.* 148.

2. The existence of incumbrances is no ground for rescission where the vendor's purpose was to use the purchase money to pay the incumbrances, and the mortgagees were willing to execute releases. Black, Res. & Can. 1043, and cases cited; 81 Neb. 754; 33 N. Y. Sup. Ct. 450.

*Streett, Burnside & Streett,* for appellee.

As found by the chancellor, the obligations to furnish the abstract showing a good, clear and merchantable title, and to place of record the satisfaction of all liens against the lands, were, by the terms of the contract and the intention of the parties, conditions precedent to the right to demand of plaintiff the payment of the balance of the purchase money or that it be placed in escrow. 6 R. C. L. 904; Bishop on Contracts, Enlarged Ed., 319; *Id.* 320; 134 Ark. 419; 121 *Id.* 487; 119 *Id.* 418.

The drainage tax covers a period of fourteen years. The assessment of benefits has the force and effect of a judgment. Appellants have not only not offered to discharge this lien, but specifically refuse to do so. 27 R. C. L. 542; 6 *Id.* 1021; 18 La. 510; 54 Pa. St. 203; 93 Ark. 447; 76 Ill. 493; 27 R. C. L. 517.

WOOD, J. On the 16th day of March, 1920, J. A. Bennett and W. S. Daniel (hereafter called appellants) entered into a written executory contract with G. M. Farabough (hereafter called appellee) by which appellants agreed to sell and the appellee agreed to buy one hundred and twenty acres of land in Drew County, Arkansas, for the consideration of $10,200. The contract provided that $1,000 of the above sum was to be paid in cash as earnest money. The balance was to be paid in "either of the following manners": $4,200 within thirty days from the date of the contract, and the balance by assuming existing incumbrances on the land in the sum of $5,000, or cash, at the option of the appellee. After setting forth the agreement for the sale and purchase and terms of payment thereon, the contract contains, among others, the following recitals: "* * * it being understood and agreed by the first party hereto that all liens and mortgages against said land shall be satisfied and placed of record before the balance of the $5,000 shall be paid over to the first party. It is further agreed and understood and the first party (Bennett and Daniel) binds himself, his heirs and assigns, that, in the event of

the payment of the sums above described in either of the manners set forth, then he shall execute his warranty deed conveying said lands in fee simple to the party of the second part (Farabough). It is further agreed and understood that the said party of the first part will submit to the second party an abstract to said lands showing a good, clear and merchantable title, and the second party shall have ten days in which to examine said abstract and to report his approval or to file his objections thereto. Then the first party shall have a reasonable length of time in which to meet any objections that said second party may find to said title.

"It is further agreed and understood that, should the said first party be unable to establish a good, clear, merchantable title to said lands, then the earnest money herein acknowledged shall be returned to the said second party upon demand, it being also understood that, after a merchantable title has been established, should the second party fail to meet the payments according to the terms of this contract, then the earnest money shall be forfeited to the said first party at his option." The contract further provided that, when the deed had been delivered and accepted, the rents for said place during the year 1920 would be paid to the appellee.

On October 1, 1920, the appellee instituted this action in the chancery court of Drew County against the appellants, Bennett and Daniel, partners doing business under the firm name and style of Bennett-Daniel Company. In this complaint he set up the contract, alleged that he had performed the same and that appellants had failed to perform the contract in the following particulars: (a) They had not within a reasonable time furnished the appellee an abstract of title showing a "good, clear and merchantable title to said land." (b) They had failed and refused to satisfy and place of record all liens and mortgages against said land before the balance of the $5,000 purchase money under the terms of the contract was to be paid.

The appellee further alleged in his complaint that the appellants had falsely and fraudulently represented to the appellee that the lands were free from local assessments for drainage purposes; that appellee relied upon these representations and would not have entered into the contract if such representations had not been made. The appellee prayed that the contract be rescinded, and that he have a decree against the appellants in the sum of $5,200, the amount paid them, with interest thereon; that he have judgment for damages in the sum of $150, which he had expended in endeavoring to have appellants carry out their contract.

In their answer the appellants denied all the material allegations of the complaint, and, by way of cross-complaint, they admitted the execution of the contract alleged in the complaint, and averred that the contract was entered into with the appellee after he had been put in possession of all the facts concerning the location and desirability of the land, and after appellee knew that the land was subject to assessment for drainage improvements. They alleged that, after clearing up all the defects in the abstract of title to the lands, they had tendered to the appellee a deed which he refused to accept; that, after the payment by the appellee of the sums mentioned in his complaint, he notified the appellants that he preferred to pay the remainder due under the contract in cash rather than to assume the incumbrances mentioned; that it was understood between them that upon appellee's election to pay this amount the appellants might use the balance so paid in cash to them in paying off the incumbrances; that the appellants thereupon requested the appellee to deposit the balance of $5,000 due them in the Dermott Bank & Trust Co. or some other bank in the State, for the purpose of paying off these debts and having the incumbrances released; that the appellants agreed to deposit with the same bank a good and sufficient warranty deed conveying to the appellee the lands in question, together with such other money as

would be necessary, in addition to the $5,000 balance due on purchase money, to satisfy the debts and remove the incumbrances; that the appellants had the holders of the incumbrances execute full releases of the incumbrances and notified the appellee that release deeds had been deposited with the Dermott Bank & Trust Company, and that appellants were ready to consummate the sale when the appellee should pay the balance of the purchase money; that appellee refused to do this and therefore failed and refused to comply with his contract. Appellants prayed that the appellee be required to specifically perform the contract on his part by paying into court the sum of $5,000, with interest, and that, upon his failure to do so, the title be declared vested in him; that appellants have judgment against appellee for the balance of the purchase money due them under the contract, and that the lands be sold to satisfy the same, or else that the appellee be required to accept title subject to the incumbrances.

The cause was heard upon the depositions of the witnesses, the contract and other documentary evidence, which was duly identified and introduced. The trial court found that the evidence presented in support of plaintiff's contention that he had been misled with reference to the drainage taxes is not sufficient to support such contention, and that his offer to take the land in the event that defendants cleared same of all outstanding liens and furnished abstract showing good, clear and merchantable title, often repeated, shows that he had waived this objection; that the evidence submitted in support of plaintiff's contention that he suffered damages in the sum of $175 is too uncertain and indefinite. The court found that the contract was executed as set up in the pleadings, and that the "plaintiff paid the $4,200 in accordance with his agreement, and elected to pay the $5,000 balance due on the lands in cash, and called upon defendants to satisfy all outstanding liens and furnish him with an abstract showing good, clear and merchant-

able title. The defendants then demanded that plaintiff first pay over to some bank the said $5,000 as a condition precedent to clearing the title. This plaintiff refused to do, and, when the defendants made no further effort to satisfy the liens outstanding on the lands, plaintiff declared a forfeiture and brought this suit for rescission and for recovery of the money already paid, and for damages. The court declared "that the defendants, after the election of plaintiff to pay the $5,000 balance purchase price in cash, should have satisfied the outstanding liens against the lands and offered an abstract of title thereto showing a good, clear and merchantable title; that it was their duty as imposed by the contract to do this, and that they had no right to demand of plaintiff the payment of this sum either to themselves or in escrow until they had so discharged the liens and exhibited such title."

The court thereupon entered a decree in favor of the appellee against the appellants in the sum of $5,200, the amount paid by appellee to appellants on the purchase price, with six per cent. interest from the date of the payment of the several sums aggregating that amount, and decreed that, unless the judgment be satisfied within sixty days, the lands be sold to pay the same. From that decree is this appeal.

1. The issue as to whether or not the appellants made false and fraudulent representations to the appellee to the effect that the land was not subject to assessment for local improvements in order to induce the appellee to purchase same is purely an issue of fact. The appellee testified that, in a circular issued by the appellants advertising the lands in controversy, among other lands for sale, it was represented that the lands in controversy "were ideally drained, with no drainage tax;" that this was a material part of the consideration; that he would not have purchased the land at the price demanded had he been apprized of the fact that the land was subject to a drainage tax extending over a

period of fourteen or fifteen years; that he first learned of this drainage tax on the lands when he received the abstract of title, and that he immediately directed the attention of appellants to the same; that appellants had not offered to adjust the matter or given appellee credit for the amount of the drainage tax on the purchase money he had paid, but on the contrary had demanded full payment of the balance due with no deduction.

The witness further testified that appellant Daniel told him at the time of the sale that there was no drainage tax on the property, and that fact controlled his purchase of the land.

Appellant Daniel, on the contrary, in his testimony denied that he told the appellee that the land was not subject to drainage tax. He got out all the circulars describing the various tracts of land which they had for sale, but had no personal recollection of this particular tract being advertised as not subject to a drainage tax. In a letter written by the appellee to appellants after the contract was entered into, and after he had received the abstract of title, appellee called attention, among other things, to the drainage tax. In answer to this letter appellant Daniel stated that they were under the impression that there was no drainage tax on the land, but found that it was assessed, and that it would amount to about ten cents per acre per year and would run fourteen years. When asked to explain this letter, appellant Daniel said that it was written with reference to the amount of the drainage tax; that at the time the deal was consummated appellee may not have known the exact amount of the tax and the abstract did not show the amount, and he wrote the letter in explanation of the amount of the tax. He further testified that he first met the appellee on March 15, 1920, when he came into witness' office and wanted to look at farms in that section with a view to purchase. On that day witness showed appellee several tracts, among others the land in controversy, and advised him to buy the same. The next day, and before the deal was consum-

mated and the written contract entered into, witness showed the appellee the land in controversy on the map, and explained to appellee that it was in the last zone of a drainage district, and that the taxes on same would amount to less than ten cents per acre per year.

A young lady who was the stenographer in the office of the appellants testified that she was present before the execution of the contract and heard the appellee mention the subject of taxes and inquire if the tract of land was included in the drainage district, and that Mr. Daniel referred him to the map hanging on the wall showing that the land was located in the drainage district, and that the appellee consulted that map before he signed the contract.

Both of the appellants testified that in the latter part of September, 1920, appellee, after looking over the land in controversy, came into their office and told them that he wanted his money back. He was asked on what grounds, and replied that they had not cleared the in cumbrances. Appellee stated that he wanted the money refunded because the deed of trust and vendor's lien against the property had not been satisfied. In the correspondence between the appellee and the appellants concerning the abstract of title it is shown clearly by some of appellee's letters that when his objection had been met as to the satisfaction "of all liens and mortgages and a record showing the satisfaction of such liens and mortgages" he was ready at once to pay over the $5,000 upon "delivery of the deed and rental contract as per our contract."

We conclude, therefore, that a decided preponderance of the evidence shows that there was no intentional fraudulent misrepresentations made by the appellants to the appellee concerning the drainage tax on the lands in controversy; that the representations made by them concerning this in the advertising circulars were not a material inducement to the appellee in executing the contract. We are convinced that a preponderance of the evi-

dence shows that the appellee had full knowledge that the land was subject to local assessment for drainage before he signed the contract.

This court has often announced rules of law to be applied in determining whether there should be a rescission of a contract on the ground of alleged fraudulent representations, and it is unnecessary to reiterate them here. Appellee has not established a cause of action for rescission of the contract under these rules. *Yeates* v. *Pryor*, 11 Ark. 66; *Matlock* v. *Reppy*, 47 Ark. 165; *Evatt* v. *Hudson*, 97 Ark. 268; *English* v. *North*, 112 Ark. 498.

2. The appellee contends that the appellants had failed at the time of the institution of this suit to furnish him with an abstract showing "a good, clear and merchantable title" to the lands in controversy, and that such an abstract as was contemplated by the contract could not be furnished until the appellant had satisfied all liens and mortgages on the land and had recorded the satisfaction and brought such record into the abstract, which was not done; that these were conditions precedent to the performance of the contract on the part of the appellee, and that the failure of appellants to comply with the contract in this respect entitled the appellee to a rescission. This presents a mixed issue of law and fact.

The only defects in the abstract of title of which appellee complains are the following, which appellee contends were unsatisfied incumbrances against the land in controversy, to-wit:

(a)  Drainage tax, $168.

(b)  Mortgage to New England Securities Company, assigned to First Congressional Society to secure $1,000, due May 1, 1926.

(c)  Interest thereon from May 7, 1919.

(d)  Deed of trust to T. C. Alexander, trustee, of May 7, 1919, due May 1, 1926, $209.55.

(e)  Interest on the above from May 7, 1919.

(f)  Vendor's lien retained in deed to secure notes to the amount of $2,666.

(g)    Vendor's lien retained in deed to secure four notes of $1,000 each, the last due Jan. 10, 1924, $4,000.

(h)    Interest on above, making a total of outstanding liens in the sum of $8,043.55, exclusive of interest. We will dispose of the above in the order presented.

(a)    We have already disposed of the drainage tax.

(b)    (c)    (d)    (e)    Of the remaining alleged outstanding incumbrances appellants concede that the mortgage to the New England Securities Company, assigned to the First Congressional Society, for $1,000, is an outstanding lien.

The land which the appellants by the contract agreed to convey to the appellee is described in the contract as the N½ of SE¼ and the SW¼ of the SE¼ of section 13, township 14 south, range 4 west, containing 120 acres. The SW¼ of the SE¼ of section 13, T. 14 S., R. 4 W., containing forty acres, is therefore involved in this litigation. But the SE¼ of the SW¼ of section 13, T. 14 S., R. 4 W., upon which the counsel for the appellee claims the Mercantile Trust Co. holds a lien, was not embraced in the contract, and the record shows that it was not involved in this litigation. It appears that the deed of trust executed May 7, 1919, for $209.55 to T. C. Alexander, trustee, for the New England Securities Company, was an outstanding lien which the appellants concede.

(f)    The contention by the appellee that there is an outstanding indebtedness of $2,666 evidenced by promissory notes, which amount is a lien upon the land in controversy, is not borne out by the facts as disclosed by the sheets of the abstract of title brought into the record, for the reason that these sheets, when considered together, show, first, that one J. J. Dicken conveyed to one Bryant Reed certain lands not involved in this controversy upon which a lien was retained in the sum of $2,666. Dicken also conveyed to Bryant Reed the SW¼ of the SE¼ of section 13, upon which no lien was retained. Reed conveyed both tracts, including the tract not in controversy in this case, and upon which a lien was retained, and also

the tracts in controversy upon which the lien was not re-tained, and appellants assumed the lien of $2,666 on the tract which is not involved in this litigation. Dicken had a lien of $2,666 on the lands not in controversy, which he, in a second deed, conveyed free of incumbrance. Even if there were an outstanding lien on forty acres of the land in controversy in favor of Dicken, the uncontrovert-ed testimony of appellant Daniel shows that Dicken, upon the payment to him of $4,000 with interest, was willing to release the lien, and had prepared a release deed for that purpose, which was not placed on record be-cause the deal was not consummated.

(g) (h) The appellants concede that the $4,000 vendor lien notes held by Dicken and the interest thereon constituted an outstanding lien on the land in contro-versy.

It thus appears that at the time of the institution of this action the only outstanding unsatisfied liens against the property were the notes for $4,000 due Dicken and the amount due on the note to the New England Secur-ities Company in the sum of $1,209.55. The contract mentioned these notes, and it is evident from the terms of the contract that the parties contemplated that these were the only unsatisfied liens, and that the amount of these notes at that time would be virtually paid by the balance of the purchase money, $5,000, which the appellee had the option to pay in cash or to assume the notes.

The undisputed testimony shows that on May 11, 1920, the appellants prepared a warranty deed and ten-dered the same to the appellee, but appellee refused to accept the same and to pay the balance of the purchase money. At that time and later, on October 1, when the action was instituted, the amount of the principal and interest of the outstanding liens was less than $5,500. After the institution of the action appellants again ten-dered the deed to the appellee and also tendered in court the sum of $520, being more than the difference between the amount of the incumbrances with interest, and the

sum of $5,000, the balance of the purchase money on the contract. The undisputed testimony shows that it was the purpose of the appellants to use the balance of the purchase money due under the contract to pay off the unsatisfied liens and to pay any additional amount necessary for that purpose, and to have the same satisfied of record, and to deliver to the appellee their warranty deed with an abstract showing the complete record title in the appellee at the time the deal was thus consummated.

The court, without finding that there were any other unsatisfied liens than those above discussed, and without finding the amount of the unsatisfied liens, determined as a matter of law that it was the duty of the appellants to satisfy the outstanding liens against the land and to offer appellee an abstract showing that these liens had been satisfied of record before it was incumbent upon the appellee to pay the balance of the purchase money.

This brings us to the issue of law as to whether or not the appellee, under the above facts, is entitled to a rescission of the contract. It will be observed that the contract bound the appellants to submit to the appellee "an abstract to said lands showing a good, clear and merchantable title." The contract gave the appellee ten days in which to examine the abstract and to file his approval or objections thereto. The contract further provided that if the appellants were unable to furnish a good, clear and merchantable title, then the earnest money was to be returned to the appellee. There was further provision to the effect that the appellee "shall not be required to pay over to the appellants the $5,000 until the liens and mortgages are satisfied and placed of record." The contract also contains the following provision: "It is further agreed and understood and the first party hereby binds himself, his heirs and assigns that, in the event of the payment of the sums above described in either of the manners set forth, then he shall execute his warranty deed conveying said lands in fee simple to the party of the second part." It is certain that under the paragraph

last quoted appellants were not to execute the warranty deed until the appellee had paid the purchase money. It is equally clear that, under the paragraph, just preceding the appellee was not to pay over the balance of the purchase money before the mortgages were satisfied and placed of record.

Now, the above provisions of the contract and the preponderance of the testimony, as we view the record, show that the parties contemplated at the time the contract was entered into that the appellants should present the appellee a "good, clear and merchantable title," that is, one that would be clear, merchantable and good, when the outstanding liens were satisfied; that appellee was then to pay the balance of the purchase money, $5,000, or to assume the incumbrances mentioned in the contract, and the appellants then should satisfy the incumbrances, if the balance of the purchase money were paid in cash, and execute and deliver to appellee their warranty deed. There is no other way to reconcile the otherwise inharmonious provisions of the contract. Courts have the right to place themselves in the same situation as the parties to the contract in order to ascertain the intention of the parties. *Wood* v. *Kelsey,* 90 Ark. 272; *Ft. Smith L. & T. Co.* v. *Kelly,* 94 Ark. 461; *Ford Hardwood Lbr. Co.* v. *Clement,* 97 Ark. 522.

The preponderance of the evidence shows that such was their intention. The correspondence between the appellee and the appellants and their respective attorneys is too lengthy to set forth, but it shows that the appellants had furnished an abstract which was satisfactory to the appellee's attorney. In the course of the correspondence, the attorney for the appellee, in a letter to the appellee, pointed out various objections to the abstract, and in regard to the satisfaction of the liens stated: "Of course, the mortgages can be paid when you close the matter. They (appellants) probably want to make these payments from the purchase price." And in a letter of appellants' attorney to the appellee concerning this matter he stated

as follows: "The mortgages are to be satisfied out of the purchase money. Your attorney admits that this will be satisfactory." The appellee did not indicate that this would not be satisfactory until he had visited the lands on September 29th and found the condition of the crop exceedingly unfavorable. Then, for the first time, he expressed dissatisfaction with the contract, demanded the return of his money, and gave as a reason for wanting to rescind the contract that the liens had not been satisfied. When such objection was made, the appellant Bennett, who had $9,000 available in cash in the banks at Dermott, proposed to deposit the sum of $5,000 if the appellee would deposit the same sum, and that if appellant did not clear the incumbrances the appellee could take the $5,000 deposited by Bennett as a bonus. Whereupon the appellee still declined, saying that he wanted his money back. This testimony of appellant Bennett was not controverted by the appellee.

While the appellee testified that he had at all times been ready, able and willing to pay the $5,000, and had kept that sum on deposit in Rogers for the purpose of completing the deal when the abstract was certified down to date showing the satisfaction of the outstanding liens, it occurs to us that his real objection to the consummation of the contract was not the mere failure upon the part of the appellants to satisfy the mortgage liens and to have the satisfaction thereof placed of record. The appellants give a satisfactory explanation of why they were not willing to do this unless they knew that the appellee intended to pay the balance of the purchase money and thus consummate the deal, the reason being that the mortgages were advantageous to the appellants, and they preferred to continue them rather than to pay them off unless the appellee was going to complete the transaction.

The appellee is in a court of conscience seeking to rescind a contract for alleged failure upon the part of the appellants to comply with the provisions of such con-

tract. As we construe all the provisions of the contract, taken in connection with the conduct of the parties showing the interpretation and meaning which they had given such contract prior to the institution of the suit, we have reached the conclusion that the appellants have not failed to comply with its terms. On the contrary, they have in good faith done all they were required to do to complete the contract. They had furnished to appellee an abstract showing a "good, clear and merchantable title," as contemplated by the parties when they entered into the executory contract for the sale and purchase of the land in controversy. *Hinton* v. *Martin*, 151 Ark. 343. We do not discover any provision in the contract which requires that the *abstract* must show that the liens had been satisfied of record, as a condition precedent to the consummation of the deal. The liens had to be satisfied and placed of record, to be sure, but there is no provision that the *abstract* must show this, before the deal should be closed. The appellee, under the circumstances, is not entitled to rescission, but, on the other hand, must be required to perform his contract.

When the appellants presented the appellee with an abstract showing a "good, clear and merchantable title" and tendered him their warranty deed, it was his duty to pay the balance of the purchase money. If he desired not to pay same direct to the appellants, then he should have met the proposition of appellant Bennett and deposited the sum in escrow in the bank to be paid over to the appellants after the liens were satisfied of record and brought into the abstract.

In *Martin* v. *Stone*, 79 Mo. 309, there was an executory contract for the sale of lands. The vendee agreed to pay the vendor $250 cash in hand, and the vendor agreed to give peaceable possession to the vendee at a subsequent date, on which day the vendee agreed to pay the sum of $4,500 in cash, the balance of the consideration of the sale, and upon condition that the vendor deliver to the vendee a warranty deed for the property. It was

afterwards ascertained that the land was incumbered by a deed of trust. The vendor expected to use a portion of the remaining purchase money in discharging the mortgage debt, and he had the holder of the mortgage lien present on the day the balance of the purchase money was to be paid for the purpose of executing a release, which the holder of the lien was willing to do upon the receipt of the money due him. The vendor executed and tendered to the vendee a warranty deed and demanded payment of the remainder of the purchase money. The vendee refused to accept the deed, and instituted an action at law to recover the cash payment he had made. In passing upon the above facts, the court said: "It is undisputed that the defendant's purpose was to pay the incumbrance out of the remainder of the purchase money, and that the owner of it was present and was willing to accept the money and release the lien. To predicate a right of rescission on the part of plaintiff on such a ground is too technical for serious consideration, especially as the defendant, at the trial, proffered to deliver the deed and have the incumbrance removed if plaintiff would pay the balance due under the contract." So we say. The action in the above case was at law, but the facts are sufficiently similar to make the doctrine there announced on the issue of rescission applicable here.

It follows that the decree must be reversed and the cause will be remanded, with directions to enter a decree in favor of the appellants, and requiring the appellee to pay into court the balance of the purchase money with interest thereon from the 11th of May, 1920, and that the appellants be required to satisfy of record all existing incumbrances, except the drainage tax, upon the lands in controversy, and furnish the appellee an abstract of title showing such satisfaction, together with their warranty deed conveying the land in controversy to the appellee; and that the appellants be required to pay the appellee all rents and profits that may have accrued since the execution of the contract, and for such other and

further proceedings according to the rules of equity and not inconsistent with this opinion as may be necessary to protect and enforce all the rights of the parties under the contract.