MEEK v. GREEN.

Opinion delivered November 10, 1924.

1. VENDOR AND PURCHASER—ABSTRACT SHOWING GOOD TITLE.—Where a contract for the purchase and sale of land calls for an abstract showing good title, the contract will be construed to mean a good record title, and not such a title as may be shown by oral proof or affidavits and other writings not subject to registration.

2. VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT.—A contract for the sale of land, which, after providing for placing the deed, cash payment and purchase notes in escrow in a bank, required the vendor to furnish an abstract of title covering the land, allowed the purchaser 5 days to point out any defects, and allowed the vendor 30 days to cure such defects and "redeliver said abstract and curative work," and that, if said abstract of title showed a good title at either of said times, the contract should be executed, but if the title "is not good or made good" in the vendor, then the bank should redeliver the deed, money and notes to the respective parties, held to authorize the vendor to supply defects in the title by affidavits and other oral proof.

3. VENDOR AND PURCHASER.—In suit by a vendor for specific performance of a contract to convey title, evidence held to show title by adverse possession entitling the vendor to recover.

Appeal from Ouachita Chancery Court, Second Division; George M. LeCroy, Chancellor; reversed.

STATEMENT OF FACTS.

D. W. Green brought this suit in equity against H. E. Meek and the First National Bank to cancel a contract for the purchase of two lots in the city of Camden, Arkansas, and to compel said bank to return to him the sum of $2,000 in cash and four promissory notes of $2,000 each deposited with said bank in escrow.

The defendant, Meek, admitted the execution of the contract for the sale of the lots, and set up facts entitling him to a specific performance of said contract. Wherefore he prays that the complaint be dismissed for want of equity, and that the contract of sale be specifically enforced.

On December 29, 1922, H. E. Meek entered into a written contract with D. W. Green to sell him two town lots in the city of Camden, Arkansas, for the sum of

$10,000. Two thousand dollars of the purchase price was to be in cash, and the balance of it to be evidenced by four notes of $2,000 each. A deed executed by the party of the first part, the cash payment, and the notes for the balance of the purchase price were placed in escrow in the First National Bank of Camden, Arkansas, to be delivered upon the following condition: "The party of the first part agrees to deliver to said bank for the party of the second part, within five days, an abstract of title covering said land, whereupon the party of the second part shall have five days within which to have the title to said property examined by his attorneys and to deliver a written opinion upon the title to said bank for party of the first part, pointing out the defects of the title, if any. After the delivery of said opinion to said bank, the party of the first part shall have thirty days within which to cure defects in the title, if any, and redeliver said abstract and curative work to said bank. If said abstract of title shows a good title to said property in party of the first part at either of said times, then said bank is authorized to deliver said deed to party of the second part and said money and notes to party of the first part. If, however, the title to said property is not good or made good in party of the first part, as hereinbefore set out, then said bank shall deliver said deed to party of the first part and said money and notes back to party of the second part."

The plaintiff introduced in evidence the original abstract of title furnished by the defendant. The abstract shows a record title from the United States by mesne conveyances to David and Paulina Snow on June 15, 1866. Then O. E. Newton and D. Newton executed a deed of trust to said lots to Robert F. Sale, trustee for Bettie Treadway. The date of the instrument was February 1, 1882, and it is marked satisfied in full on January 22, 1883. The abstract also shows that D. Newton and Ora E. Newton executed other deeds of trust from time to time on said lots, which were satisfied of record. The abstract also shows that, on February 21, 1891, D. New-

ton and O. E. Newton, his wife, executed a deed of trust to A. A. Tufts, trustee, to secure a note for $3,000, due February 21, 1892.

This mortgage was foreclosed by suit in the chancery court, and a decree of foreclosure was entered of record on June 3, 1893. The chancery court record shows that the lots were sold by a commissioner appointed for that purpose, and were purchased by W. E. McRae on the 25th day of August, 1894.

The chancery court record also shows the execution of a deed by the commissioner to W. E. McRae on the 10th day of December, 1894, and the approval thereof on the same day by the chancery court. It was ordered that a copy of the order of the chancery court and the acknowledgment of the deed be entered upon the deed and certified by the clerk under the seal of the court, to the end that same might be entitled to record.

H. E. Meek deraigned title by mesne conveyances from said W. E. McRae. Affidavits and oral evidence curing the defects in the title were introduced in evidence, and will be referred to under an appropriate heading in the opinion.

The chancellor found the issues in favor of the plaintiff, and it was decreed that the contract of purchase between the plaintiff and the defendant be canceled, and that the First National Bank of Camden, Arkansas, should deliver, upon demand, to the plaintiff, D. W. Green, the sum of $2,000 cash and the four notes of $2,000 each deposited with said bank for the balance of the purchase price of said lots. The case is here on appeal.

*Smead & Meek,* for appellants.

It is conceded that a vendor contracting to deliver an "abstract showing good title" is required to furnish an abstract showing a good record title; but the rule is different where the vendor merely contracts to furnish good title or a marketable title, without specifically agreeing to furnish "abstract showing good title" or "marketable title." In the latter case, a title by limitation, or a title proved by other than record title, is

sufficient. 152 Ark. 193. Appellant furnished appellee evidence of a safe limitation title. This court has recognized that an agreement to furnish an abstract is not synonymous with an agreement to furnish abstract showing perfect title. 154 Ark. 193; 151 Ark. 343. Counsel contend, both from the language of the contract, and from the presumptive knowledge of both parties of the chaotic condition of land titles in Ouachita County resulting from a fire, that the appellant merely agreed to deliver a good title, not an abstract showing good title.

*Thos. I. Thornton,* for appellee.

There is no ambiguity in the contract. It simply means that the *abstract must show* a good title in Meek, either at its first or last presentation. If it did not show it upon its first presentation, then the muniments of title covering the defects should have been procured, recorded and brought forward into the abstract, in order that the latter could show a good title in Meek. This is the "curative work" contemplated by the contract. The phrase "as hereinbefore set out" refers back to the clause "if said *abstract of title* shows a good title to said property in party of the first part at either of said times," and means that the title must be made good by additions to the record and that the abstract must show this, and within the time fixed by the parties. Maupin on Marketable Titles to Real Estate, 3rd ed. 165; 206 Ill. 512. An abstract of title contains only such matters as are shown by the record. 152 Ark. 192. The title shown by appellant would not be a good merchantable title, even if the contract had called for that character of title. In order to acquire title by adverse possession, the holding must be against one entitled to possession of the land held, and having the right to bring an action for its recovery. The statute of limitations does not run against a reversioner until the death of the life tenant. 60 Ark. 70; 98 Ark. 30; 116 Ark. 233. And the vendor must show that there are no persons in remainder who might claim the estate. 16 N. Y. 156; 54 N. E. 674; 128

Ark. 342. See also 126 Ark. 1; 117 Ark. 366; 115 Ark. 359; 140 Ark. 367; 172 S. W. 867 (Ark.); 65 Ark. 90; 58 Ark. 510; 69 Ark. 539; 97 Ark. 397. The contract called for, and Meek should have furnished, an abstract showing a good record title. The case of *Dalton* v. *Lybarger,* 152 Ark. 193, quoted from by appellant, is decisive of this question. See also 151 Ark. 343; Maupin on Marketable Titles, etc., 3rd ed. 24; 163 N. W. 924; 167 N. W. 15; 173 N. W. 871; 195 S. W. 259; 189 S. W. 275.

HART, J., (after stating the facts). This court has held that, where a contract for the purchase and sale of land calls for an abstract showing good title, the covenant will be construed to mean a good record title, and not such a title as may be shown to be good by oral proof, or affidavits and other writings not subject to registration. In short, it is not sufficient in such cases that the title is good in fact, that is, capable of being made good by the production of affidavits or other oral testimony, but it must be good of record. *Hinton* v. *Martin,* 151 Ark. 343; *Dalton* v. *Lybarger,* 152 Ark. 193; and *Bennett* v. *Farabough,* 154 Ark. 193.

Counsel on both sides recognize this to be the settled rule in this State, but differ as to the effect of the language used in the contract under consideration in this case.

On the part of the plaintiff it is contended that the contract itself brings the case within the rule announced. On the other hand, it is contended by the defendants that, when the contract is construed as a whole, it shows that any defects in the title which could not be cured by record evidence might be supplied by affidavits and other oral proof.

The covenant in the contract on this point has been copied in our statement of facts, and reference will only be made to it here. The covenant provides that Meek shall deliver to the bank, for Green, an abstract of title covering said lands. It then provides that Green shall have five days within which to have the title examined

by his attorney and a written opinion by him, pointing out the defects in the title, if any.   The contract provides that Meek shall have thirty days within which to cure said defects in the title and to redeliver said abstract and curative work to said bank.

If the said abstract of title shows a good title in Meek at either of said times, then it is provided that the bank is to deliver the deed to Green and the money and notes to Meek.   If, however, the title to said property is not good, or not made good in Meek, as hereinbefore set out, then the deed and the money and notes are to be returned to the respective parties.

The majority of the court is of the opinion that this language authorizes Meek to supply defects in the title by affidavits and other oral proof.   The covenant provides for a redelivery of the abstract and curative work to the bank.   If it merely contemplated strengthening the abstract by record evidence omitted from it, it would not have been necessary to have used the phrase, ''curative work.''

It is true that the next sentence uses the words, ''if said abstract of title shows a good title * * * at either of said times;'' but it seems clear that the words, ''said abstract of title,'' means the abstract containing the curative work.   In short, said ''abstract of title'' refers to the words, ''said abstract and curative work,'' and shows that the parties intended to use the words, ''abstract of title,'' in an enlarged sense so as to include the curative work.

This view is strengthened by the next sentence in the covenant, which provides that, if the title to the said property is not good, or made good in Meek, then the bank shall redeliver the deed, money and notes to the respective parties entitled to the same.   If the words, ''curative work,'' were not intended to mean anything except record evidence, they need not have been used.   The parties would simply have provided that Meek should have thirty days within which to cure defects in the title

or to amend the abstract and then redeliver the abstract to the bank.

If it was intended that record evidence alone should be used, such evidence would be part of the abstract of title, and it would not have been necessary to have used the words, "curative work," at all. In short, if the contract meant that Meek was to furnish an abstract of title which, on its face, would show that he had a good title of record, then it should have merely given him additional time to perfect or amend his abstract of title. The contract, in our opinion, when considered from its four corners, simply means that, if Meek had a good title to the lots at the end of the period of time given him for curing defects in it, the contract was to stand; and if he did not have a good title at that time, the contract was to be at an end.

By adverse possession, it is sufficient to enable the vendor to maintain an action for specific performance against the purchaser in the absence of a contract for a perfect record title. In such cases, however, the proof of the adverse possession must be readily available and of a character so convincing as to leave no reasonable doubt of its sufficiency. *Hinton* v. *Martin*, 151 Ark. 343. Tested by this rule, we think the testimony in the case entitles Meek to a decree for specific performance.

D. Newton and O. E. Newton, his wife, executed a deed of trust to the lots on February 21, 1891, to secure an indebtedness of $3,000. The fee in the lots was mortgaged. The deed of trust also contained a covenant that the lots were free from all incumbrances, and that the grantors would forever warrant and defend the title to the same.

D. Newton and Ora E. Newton were made parties to the foreclosure suit. W. E. McRae became the purchaser at the foreclosure sale, and received a deed from the commissioner appointed to make the sale. The deed was acknowledged in open court, and McRae went into possession of the lots by virtue of his deed, and remained in possession of them until he sold them.

According to the testimony of one witness, the lots were known as the Newton lots in 1878, and they then had a building on them.

Another witness stated that they were known as the Newton lots in 1872.

Affidavits of several witnesses were filed to the effect that they had known the lots for forty years, and some of the witnesses had known them for forty-five years. They all said that D. Newton and Ora E. Newton were in the exclusive possession of the lots until they were sold under the foreclosure decree in 1894; that W. E. McRea then went into possession of the lots, and that he and his grantees have been in the exclusive and peaceable possession of them ever since; and that none of the parties mentioned, or their heirs, have ever been insane.

The affidavit of Mrs. Ora E. Newton was also filed with the abstract of title. According to her testimony, the lots were in the peaceable and adverse possession of her husband, D. Newton, and herself for many years prior to the year 1894. She does not recollect how they acquired title to the property. She does recollect that W. E. McRea acquired title to the property in 1894, and since that time neither her husband nor herself nor any of their children have had any claim or made any claim to said lots.

It appears that D. Newton is dead, but the affidavit of his son, R. D. Newton, was also filed. According to his testimony, all of the children of D. Newton and Ora E. Newton are still living, and all of them are more than thirty-five years of age, except two children who died in infancy. R. D. Newton is sixty-one years of age, and has been a resident of Camden all of his life. His father had been in the actual possession of said lots from about the year 1870 to the year 1893, when the lots were sold under a mortgage foreclosure decree and purchased by W. E. McRae. R. D. Newton stated further that it was a matter of family history that his father received a deed to the lots from the city of Camden about the year 1870, in consideration of services rendered the city.

There is no dispute that all of these persons have had the actual and peaceable possession of the lots during the years mentioned. No other person has ever made a claim of title to the lots during this time. The evidence to this effect is available, and there is but little room to doubt that Meek and his grantors have title to the lots by adverse possession. Hence all the requirements of the law as to the title by adverse possession, where specific performance is asked, have been met.

Therefore we are of the opinion that Meek was entitled to a decree of specific performance as prayed for by him, and, for the error in canceling the contract of purchase and sale between him and Green, and ordering the restoration of the consideration to the latter, the decree will be reversed, and the cause will be remanded with directions to enter a decree in accordance with this opinion. It is so ordered.

McCULLOCH, C. J., (dissenting). The law of the case is well settled by decisions of this court cited in the opinion of the majority, and the decision turns on the construction of the contract of the parties. My interpretation of the contract is that it requires the seller to furnish a good title—an abstract showing good title, which means a good record title, for, unless the abstract shows it, there is no record title. A good title must be a record title, otherwise the abstract will not disclose it, for an abstract is merely an epitome of the record. It is not within the purport of an abstract to show title resting upon matters *in pais.* The contract involved in this case provides that the seller shall furnish an abstract "covering said land," and that the purchaser shall have time for his attorney to examine it and report defects, if any, found; that the seller shall have thirty days "within which to cure defects in the title, if any, and redeliver said abstract and curative work." The next sentence reads as follows: "If said abstract of title shows a good title to said property in party of the first part, at either of said times, then the bank is authorized to deliver said deed." The latter sentence determines,

I think, the character of the contract. It clearly means that "at either time;" that is to say, when the abstract is first delivered, or when it is redelivered after completion of the "curative work," it must show a good title, not that the curative work shall show a good title, but that the abstract shall show it.

The "curative work" referred to in the abstract must be such that will perfect the record title. I think the term "curative work" relates to matters such as additional deeds, confirmation decrees, and the like, which can be put on record so as to appear in the abstract. It does not relate to matters *in pais,* such as proof of adverse possession. Any other interpretation disregards, in my view, the sentence in the contract which provides that the abstract must "at either time" show a good title.

In the case of *Danzer* v. *Moerschel* (Mo.) 214 S. W. 849, 7 A. L. R. 162, the Supreme Court of Missouri said:

"The great weight of authority supports the rule that an abstract is an epitome of the record evidence of title; that a contract calling 'for an abstract showing good title' calls for record evidence; that nothing less will 'satisfy the condition, no matter what the vendor's title might be;' that 'it is not sufficient that the title is good in fact, that is, capable of being made good by the production of affidavits or other oral testimony; it must be good of record;' that in such case title by adverse possession will not suffice."

In the case of *Lake Erie Land Co.* v. *Chilinski.* 197 Mich. 214, 163 N. W. 929, where the court held that there should be "an abstract showing marketable title," the court said:

"If the abstract does not, on its face, show a merchantable title, and it required oral proof to establish the fact that the title is a merchantable one, a contract agreeing to furnish an abstract showing a merchantable title is not complied with. The abstract itself must furnish the evidence that the title is merchantable."

In *Moser* v. *Tucker* (Texas Civ. App.) 195 S. W. 259, the Texas court said:

"Where the abstract is to show a merchantable title, it cannot be supplemented with affidavits, oral proof, or writings not recordable."

In Maupin on Marketable Titles to Real Estate, 3d ed., § 288, the rule is laid down as follows:

"The right of a purchaser to reject a doubtful title depends, of course, upon the terms of his contract. He will have no right, if he has agreed to accept the title such as it is. On the other hand, the vendor cannot resort to parol evidence to remove doubts about the title, if, by the contract, he is to furnish a 'good title of record,' nor if he obligates himself to deliver an abstract showing a good title * * * , nor will the purchaser be required to go outside of the abstract in examining the title."