## BRAYTON v. UNITED STATES.
### No. 1106.

Circuit Court of Appeals, Tenth Circuit.
Dec. 3, 1934.

Homer E. Brayton, of Pueblo, Colo., pro se.

Ivor O. Wingren, Asst. U. S. Atty., of Denver, Colo. (Thomas J. Morrissey, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before PHILLIPS and BRATTON, Circuit Judges, and POLLOCK, District Judge.

BRATTON, Circuit Judge.

Polar Ice Cream Company, a corporation engaged in business at Pueblo, Colo., filed its petition in voluntary bankruptcy on December 15, 1932. It was adjudicated a bankrupt on the following day, and Thomas L. Bartley was subsequently appointed trustee. August Dubois Forbush was its president; Arthur Richard Bliesner, secretary-treasurer and general manager; Elis Carl Nelson, son-in-law of Forbush, salesman; and Homer E. Brayton, attorney. The four were indicted for a conspiracy to conceal assets of the bankrupt in violation of the Bankruptcy Act (section 29 [11 USCA § 52]). Their joint demurrer to the indictment was overruled, and they were tried together. Forbush and Brayton were convicted. Bliesner and Nelson were acquitted. Brayton appealed.

The first grievance presented relates to the action of the court in overruling the demurrer to the indictment. It is said that the charge of conspiracy is separate from the overt acts, and must be complete within itself; that an omission in it cannot be supplied by intendment or implication, and that it cannot be aided by the alleged overt acts unless they are expressly included in the conspiracy charge or specific reference is made therein to them. That is a correct statement of the law, but the conspiracy charge here is sufficient within itself and without aid from the specified overt acts. It charges that the defendants, while occupying their respective positions, unlawfully, knowingly, willfully, and feloniously combined, conspired, confederated, and agreed together to commit an offense against the statute; that, in contemplation of bankruptcy, they would fraudulently, feloniously, and with intent to defeat the operation of the Bankruptcy Act (11 USCA), conceal and transfer certain enumerated accounts receivable in the sum of $2,943.03, belonging to the corporation; that they would falsify the minute book, journal, and ledger relating to the affairs of the corporation by making false entries in them respecting the amounts of salaries earned by defendants Forbush and Bliesner and credited to them, and that they would thus conceal the described accounts from the trustee in bankruptcy. The overt acts charged consist of fictitious minutes of pretended meetings of the board of directors, false entries in the loose-leaf ledger and other books of the corporation, extracting certain sheets from the ledger, and substituting others in their stead. Laying the overt acts aside, every essential element of the conspiracy was charged with sufficient certainty to identify the offense and to inform the defendants with respect to it. That meets the requirements of law. The same degree of detail is not exacted in an indictment for conspiracy in stating the purpose of the conspiracy as must be employed in alleging the substantive offense. Thornton v. United States, 271 U. S. 414, 46 S. Ct. 585, 70 L. Ed. 1013. If appellant found himself unable to prepare for trial without further specification, his remedy was a motion seasonably made for a bill of particulars supplying the needed information. Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606; Durland v. United States, 161 U. S. 306, 16 S. Ct. 508, 40 L. Ed. 709; Kirby v. United States, 174 U. S. 47, 19 S. Ct. 574, 43 L. Ed. 890; Rinker v. United States (C. C. A.) 151 F. 755; Morris v. United States (C. C. A.) 161 F. 672; Salerno v. United States (C. C. A.) 61 F.(2d) 419; May v. United States (C. C. A.) 199 F. 53; Lewis v. United States (C. C. A.) 295 F. 441; Lauderdale v. United States (C. C. A.) 48 F.(2d) 481.

Next, it is said that the case against appellant must fail because, by acquitting Bliesner and Nelson, the jury necessarily found that he did not conspire with them; that the only conspiracy he could have entered into with Forbush, the remaining conspirator, related to the debt due the latter for salary; that the indictment showed upon its face and in effect charged that the corporation owed him $2,200; that admitting a debt for that amount it alleged a conspiracy to extract the page from the loose-leaf ledger showing Forbush had a credit for that amount and to substitute one containing three credits of $200.00 each. From this it is argued that there could be no conspiracy to conceal assets when the effect of the transaction was to destroy a debt against the corporation and to substitute for it a smaller one or a claim for a less amount. This is not a charge of defrauding the corporation or its creditors by falsely increasing accounts on the books. It is a charge of a conspiracy to conceal assets by transferring title to certain book accounts from the corporation to its officers and agents under the guise of payment of claims for salaries. It is a scheme to fraudulently divert title to assets from the corporation to its officers and agents and that may be achieved through a change in the form of the claims, even though the change includes a reduction in amount. An increase in amount could afford a motive to enter into a scheme, but a change in the form of the

claim from one of doubtful success to one of preferred status or advantage could provide the motive even though the change involved a reduction in amount. The test is whether they confederated to conceal assets and falsified the records of the corporation as a means of effecting that end. If so, a crime was committed even though the mutilation involved the destruction of one claim and the substitution of a smaller one. The amount is not decisive.

█ Finally, appellant argues that there is no substantial evidence to sustain the verdict; that, according to all the evidence, his acts were done in good faith, openly and in the nature of disclosure rather than concealment. It appears from the record that he prepared purported minutes of a meeting of the board of directors held June 2, 1930, at which a resolution was adopted increasing the salary of Bliesner to $450 per month; that he prepared purported minutes of a like meeting held February 15, 1932, at which a resolution was adopted authorizing payment of a salary of $200 per month to Forbush during that year; that he held extended conferences with the officers and directors of the corporation on the day and night immediately preceding the filing of the petition; that he advised them that they were entitled to preferred claims for their respective salaries for three months immediately preceding bankruptcy; that he prepared the form of assignment of the accounts and had the bookkeeper type it; that he directed the bookkeeper to make the necessary entries in the books and records to conform to the resolutions concerning salaries of the officers; that, pursuant to that direction, she made numerous changes in the records, removed some sheets from the ledger, and substituted others; that he was present when some of the entries were made and when the accounts were selected for assignment; that he directed the officers and agents of the corporation to keep away from the referee in bankruptcy; that he prepared the schedules in bankruptcy and omitted the accounts in question from them; and that, after an investigation was begun, he asked Bliesner "why in the hell he did not destroy the sheets which were taken from the ledger." There is a conflict in the testimony with respect to the time the minutes of the meeting pretendedly held on June 2, 1930, were prepared. Appellant testified that he prepared them early in 1931, long before bankruptcy was contemplated, and that testimony was corroborated by the opinion of an expert on questioned documents. C. C. Bellinger, an at-

torney at Pueblo, testified that he was employed in July, 1932, to prepare some minutes for the corporation and to put the minute book in proper condition; that the previous minutes were delivered to him; that they were rolled and tied with a shoe string; that he placed them in chronological order, compiled another set, bought a book, and placed them in it; that the book as thus prepared contained the minutes to and including July 1, 1932; and that the minutes of June 2, 1930, were not in it. A special agent for the Department of Justice and an investigator for the Rocky Mountain Association of Credit Men examined the book about February 1, 1933. Each testified that the minutes of February 17, 1930, June 2, 1930, February 16, 1931, February 15, 1932, and November 1, 1932, all were written on paper of the same size and watermark as that on which the schedules were prepared; that the minutes and ink with which they were signed appeared to be fresh and different from the other minutes; that they bore no stains or fingerprints or "dog-ears"; that at the time of trial they were marked, "dog-eared," and not fresh. There likewise is a conflict concerning the time the minutes of the meeting held February 15, 1932, authorizing the salary to Forbush, were prepared. Appellant testified that he prepared them in October, 1932. He and others testified that it was the custom of the directors to hold informal meetings, that is, to discuss matters informally; that they then would inform appellant of their action and he would prepare written minutes. Forbush and Bliesner told the special agent for the Department of Justice and the representative of the Credit Men's Association that the minutes relating to salaries were prepared in the office of appellant about the time of bankruptcy. The officers of the corporation learned on the 8th or 9th day of December that an attorney for one of the largest creditors had announced his intention to file involuntary bankruptcy proceedings against it. If believed by the jury, the testimony thus reviewed would warrant the conclusion that the minutes were prepared after threatened involuntary bankruptcy and in contemplation of the voluntary proceedings rather than early in 1931 and in October, 1932, as appellant testified. Manifestly, there was an issue for the jury to determine. It was whether, on the one hand, the pretended meetings were in fact held and the salaries fixed either by informal discussion or otherwise, the minutes prepared, and other acts of appellant done in good faith in the honest belief that

392

the officers were entitled to preferred claims and to have them paid with property of the corporation, or whether, on the other hand, everything done was a fabrication hurriedly enacted immediately preceding the institution of bankruptcy proceedings to transfer title to the accounts and to fraudulently conceal them from the trustee. Under full and fair instructions of the court in which the jury were told that intent was the important element, that they could not return a verdict of guilty unless they found that the minutes were prepared with the criminal intent and for the fraudulent purpose of aiding the parties to secure payment of increased salaries, the jury resolved the question against appellant.

■ There was no direct evidence of a formal, express agreement to conceal assets, but that was not necessary. It was enough to show that the minds of the parties met in an understanding way so as to bring about an intelligent and deliberate agreement to do the act charged. Proof of formal words was not necessary. Such an agreement may be inferred from statements, acts, and circumstances. Telman v. United States (C. C. A.) 67 F.(2d) 716. We do not weigh evidence. We merely determine whether the verdict is sustained by substantial evidence. A painstaking review of the record leads us to the conclusion that the verdict here is thus sustained.

The judgment is affirmed.