CONSOLIDATED AMERICAN ROYALTY CORPORATION v. TALIAFERRO et al.

ROYALTY CORPORATION OF AMERICA v. SAME.

Nos. 1187, 1197.

Circuit Court of Appeals, Tenth Circuit. June 26, 1935.

Rehearing Denied Aug. 6, 1935.

Elmer J. Lundy, of Tulsa, Okl. (Poe, Lundy & Morgan, of Tulsa, Okl., on the brief), for appellant.

H. R. Young, of Tulsa, Okl. (A. F. Moss, of Tulsa, Okl., on the brief), for appellees.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

No. 1187

These appeals arise from proceedings subsequent to the decision of this court in Greer Inv. Co. v. Booth, reported in 62 F.(2d) 321, 324. We there held that a transfer of all the properties of the Petroleum Royalties Company, a common law trust, to a corporation of the same name was void. Our opinion further held that "Upon such restoration, the shareholders who had exchanged their shares would be entitled to have their Trust certificates restored."

Plaintiffs in that case were in part shareholders in the trust who had been fraudulently induced to exchange their shares in the trust for shares in the corporation. In order that they might have standing to attack the transfer of the trust properties, it was necessary that their exchange of shares be rescinded and they restored to their position as shareholders in the trust, which was done. But that relief was but a necessary preliminary step to the main relief sought, revesting in the trust the title to the properties transferred to the corporation. As said in our opinion, the "suit was primarily in behalf of the Trust." We could not and did not hold that upon restoration the properties would be owned by those who had been defrauded or who had not exchanged their shares to the exclusion of other shareholders. Such decision would divest shareholders who had exchanged for corporate shares but who had, perchance, not been defrauded, of their interest in the trust estate, and would lead to ludicrous results.

For example, if three per cent. of the shareholders were the only ones with a right to complain, they might cause to be set aside a void transfer of corporate properties. When the transfer is avoided, who owns the property reconveyed, the corporation or three per cent. of its shareholders? To state the question is to answer it.

About 97 per cent. of the trust shares had been exchanged for corporate shares; the decree heretofore affirmed properly provided for a re-issue of trust shares to those who had exchanged for corporate shares, or their assignees. As to the few owners of corporate shares who were plaintiffs in the action, the decree itself provided for the re-issue; as for the many owners not parties to the suit, the decree provided:

"That all persons other than the complainants in this case who claim any interest in the trust estate by reason of their past ownership of preferred shares of the trust estate or the past or present owners of the preferred stock of said Petroleum Royalties Company of Oklahoma, the corporation, shall have the right hereafter to present such claims to said Master and such rights shall be hereafter determined by the court." ·

After the main suit was brought, but before the decree became final, appellant acquired 24,199 shares of the preferred stock of the corporation. After the decree became final, appellant presented its certificates to the master, accompanied by proof of ownership, with the request that trust shares be issued therefor. Two parties disputed appellant's claim as to 3,520 shares, but that controversy is not now in the case. Appellant's ownership of 20,543 shares is disputed by no one; yet the master recommended, and the trial court decreed, that this substantial share in the properties of the trust should be canceled out, thus increasing the proportionate interest of all other shareholders of the trust.

Before the master, the receiver objected on the ground that appellant was indebted to the trust and asked that this indebtedness be offset against appellant's right to trust shares. The master properly denied this peculiar application of the doctrine of set-off, one sufficiently valid reason being that a corporation may not adjudicate and collect a debt from a stockholder by the extra-judicial expedient of declining to transfer his shares on the corporate books. Remedies by execution, attachment or garnishment are provided for the purpose of applying assets to the discharge of liabilities. But the master, in some way not clear to us, construed our opinion on the first appeal to mean that when the properties were revested in the trust, their ownership would be in those who had been defrauded, or at most in those who acquired stock in the corporation without knowledge that a fraud had been perpetrated. The conclusion of the master discloses the reason for his recommendation:

"The Master therefore finds, as a matter of fact, that Consolidated American Royalty Corporation was not an innocent purchaser or transferor of certificates, but acted with full knowledge of the illegality and fraud involved in the entire transaction that is the subject of this case.

"The Master further concludes that the Consolidated American Royalty Corporation, by reason of its knowledge of such illegality and fraud, is not of that class of shareholders whose claims to transfer were referred to the Master by the order of reference."

The trial court denied exceptions to the master's report upon the ground that appellant and its president knew the facts and circumstances surrounding the transfer from the trust to the corporation when it acquired the corporate shares in controversy; that it participated in a transaction which, to undo, cost the trust estate thousands of dollars. The conclusion of the trial court was that its ownership in the properties should stand forfeit for its fraud. Passing the point that appellant herein was not a party to the main suit, even so the result does not follow. If appellant has been guilty of fraud, it should be sued, the facts determined and the damage ascertained. To forfeit appellant's ownership in the properties of the trust, of a value not shown by the record, in satisfaction of an unadjudicated claim for fraud of an unmentioned amount, is a short cut which we cannot sanction. Whether such summary procedure leads roughly to justice or injustice, the record here does not disclose. The same considerations dispose of the trial court's suggestion that appellant's legal right to share in the properties in which its money is invested should be cut off because its hands are said to be unclean.

The master's conclusion that only innocent holders of corporate shares are enti-

tled to trust shares is likewise untenable. What has heretofore been done is simply that the properties transferred to the corporation have been revested in the trust. That does not support the conclusion that the interest of those who acquired stock knowing the facts should be conveyed by decree of court to those who bought in ignorance.

The suggestion that those who acquired corporate shares by assignment have no enforcible right is likewise untenable. It rests upon the same mistaken assumption that appellant's right is founded on fraud practiced upon it. It does not. It rests upon its ownership of a share of the properties of the trust.

The decree in No. 1187 is reversed with directions to grant appellant's application except as to the 3,520 shares not involved on this appeal. Costs here and below will be taxed against the estate.

## No. 1197

This is an appeal from an order disallowing appellant's claim for office expenses alleged to have been incurred for the use and benefit of the Petroleum Royalties Company, a trust estate, from May 1, 1931, to November 1, 1931, which was the time elapsing between the filing of the suit to avoid the transfer from the trust to the corporation, and the date the transfer was adjudged to be void.

Prior to this period the Petroleum Company had its own office in the Atlas Building in Tulsa. The Consolidated Company, nominally owning all of the common stock of the Petroleum Company by virtue of the sale later held fraudulent and void, moved the office of the controlled company to the Exchange Building in Tulsa, where it shared a suite then occupied by the Consolidated American Royalty Corporation, The Royalty Corporation of America, Mineral Rights Corporation, the Midland Royalty Corporation, the Tri-State and Royalty Corporation, and perhaps some others. One J. Edward Jones appears to have been the president, in fact if not in name, of all of them. The officers of these concerns were hopelessly interlocked; it is enough here to say that Jones was the guiding spirit of all their destinies, and that the officials of appellant and the Petroleum Company were "practically the same." When the Petroleum Company was moved into the nest, one witness testified "my recollection is anoth-er room was added to all the other offices, or perhaps two rooms."

The then employees, officials, and attorneys of the sundry corporations devoted, it is said, some of their time to the affairs of the new occupant. Jones had an office in New York City, and testified that one-sixth of the time of certain employees of that office was devoted to the New York affairs of the Petroleum Company. In October, 1931, a final decree was passed setting aside the deal by which the Consolidated Company acquired dominion over the Petroleum Company. Upon the heels of that decree came a receivership which terminated the control of the Jones group. This claim for $5,849.02 was then filed against the trust estate, representing what the ousted group asserts is a fair proportion of the total rent and office expenses of the cluster of corporations for the period. The claim is not filed by the parent company, the Consolidated, but by another of the affiliates; whether that course was pursued because during the period in controversy $95,000.00 of the income of the Petroleum Company was expended by the New York office without an accounting satisfactory to the trial judge, is a matter of surmise and, in the view we take of the case, immaterial.

Appellant invokes the sound doctrine that expenses for preserving property pending litigation are a proper charge against the estate. Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435; Burnrite Coal Briquette Co. v. Riggs, 274 U. S. 208, 47 S. Ct. 578, 71 L. Ed. 1002; Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457; Gross v. Irving Trust Co., 289 U. S. 342, 53 S. Ct. 605, 77 L. Ed. 1243, 90 A. L. R. 1215. Confessing but avoiding, appellees rely upon authorities which hold that one whose possession is acquired through fraud may not be reimbursed for expenses incurred in preserving the property while the fraud is being adjudicated, Milwaukee & Minnesota R. Co. v. Soutter, 13 Wall. (80 U. S.) 517, 20 L. Ed. 543; Burt v. C. Gotzian & Co. (C. C. A. 8) 102 F. 937; Leinbach v. Dyatt, 117 Kan. 265, 230 P. 1074, and upon the doctrine that voluntary payments are not recoverable. Houston Oil Co. v. Texas (C. C. A. 5) 250 F. 572; Detroit Edison Co. v. Wyatt Coal Co. (C. C. A. 4) 293 F. 489.

These rules are settled and sound; but to apply them here would require a deline-

ation of the intricate web of these many corporations for the purpose of finding with certainty that which seems to be apparent from the record, to wit, that appellant and the Consolidated Company should, for this purpose, be treated as fingers of the same hand. That task is unnecessary, for the finding of the court below is readily sustainable on the ground that the proof does not measure up to the exacting standard required when affiliates deal with each other.

 Appellant's officers were practically identical with those of the Petroleum Company. All dealings between the two are subject to the closest scrutiny. Western Distributing Co. v. Public Service Commission of Kansas, 285 U. S. 119, 52 S. Ct. 283, 76 L. Ed. 655. What is the proof here? That the total expense of running the office was so much, and that in the opinion of witnesses called by appellant, one-sixth of it should be allocated to the trust. Some little effort was made to be specific, but such proof is entirely too nebulous to require the findings of fact of the trial court to be overturned. If there was any thought of recoupment, when these expenses were incurred, an itemized statement of services performed for the trust should have been kept, as well as a specific allocation of space utilized. For example, a telephone and telegraph bill of $791.32 is one of the items; whether that large sum was expended in the simple business activity of receiving and cashing royalty checks—the sole business of the trust—or in connection with the pending litigation to retain control, or in the campaign then going on to buy preferred stock, we are not advised except by a most general conclusion of a witness. A claim like this cannot be converted into cash by a rough estimate of interested parties who fail to supply the exact proof of which the situation admits. Cf. Rasmussen v. Gresly (C. C. A. 8) 77 F.(2d) 252.

There is another point, not adverted to in the briefs. The proof discloses that $95,000.00 of the moneys of the trust was sent to New York and only a pitifully small proportion thereof has been accounted for in this record. More than $5,000.00 of it was sent back to the Tulsa office as "petty cash." The explanation of the expenditure of that sum is vague and indefinite. A part of this claim is based on expense in the New York office. That office received enough of the moneys of this trust to pay all these expenses manyfold. The record therefore not only is fatally indefinite as to the amount of the claim, but is likewise indefinite as to the amount of moneys of the trust which has or should have been applied thereon.

The trial court has been diligently engaged in the administration of this estate since 1931. It has many ramifications of which the trial court is fully advised and we but sketchily. There is nothing in this record to afford a reason why its decision on this claim should be disturbed.

The order in No. 1197 is affirmed.

Upon Petition for Rehearing in No. 1187.

Appellees' petition for rehearing is denied. Counsel's construction of the first opinion of this court, Greer Inv. Co. v. Booth, 62 F.(2d) 321, and their conception of the results flowing from a decree setting aside a voidable transfer of corporate property, are so diametrically opposed to ours that an attempt to amplify would serve no useful purpose.

Counsel for appellant have directed our attention to an error in addition in the opinion which is in their favor. The uncontested claims add up to 3,654 shares instead of 3,520; the number of corporate shares to which appellant is entitled to relief is therefore 20,545.