## FORBUSH CO. v. BARTLEY et al.
### No. 1206.

Circuit Court of Appeals, Tenth Circuit.
June 27, 1935.

Benjamin F. Koperlik, of Pueblo, Colo., for appellant.

A. T. Stewart, of Pueblo, Colo., for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Appellant filed two claims against the bankrupt estate of The Polar Ice Cream Company, one for $24,500 evidenced by a note given shortly before bankruptcy in alleged renewal of prior notes; one for $21,261.53, balance of an alleged open account for rent, refrigeration, oil and gas, interest, ice, and labor. The referee disallowed the claims after an extensive audit of the books and a lengthy hearing, and the trial court confirmed the referee's findings and order. The referee, in disallowing the claims, commented on the fact that there were so many erasures and breaks in continuity in the books of account, and so many important records missing, that a substantial doubt was raised as to the integrity of the records relied upon to prove the claims; he also found that the bankrupt was an instrumentality of appellant used to work a fraud upon other creditors.

Appellant argues that the uncontradicted testimony, supported by the books of account, conclusively establishes its claim. While the scope of the review on appeals taken under section 25 of the Bankruptcy Act, as amended by Act May 27, 1926, 11 USCA § 48, is not as narrow as in those taken under 24b, as amended by Act May 27, 1926, 11 USCA § 47(b), yet this court can not try de novo all contested claims in bankruptcy. Where there is substantial conflict in the testimony, or where different conclusions may reasonably be drawn, a finding of fact by the referee, particularly where based on testimony of witnesses on the stand, will not be disturbed on appeal unless it clearly appears that the finding is erroneous or .resulted from a mistaken view of the law. Where the trial court has approved the finding, the presumption of correctness is strengthened. Jones v. Clower (C. C. A. 5) 22 F.(2d) 104; Monson v. Hibler (C. C. A. 9) 24 F.(2d) 909; In re Ben Boldt, Jr., Floral Co. (C. C. A. 10) 37 F.(2d) 499; Beneke v. Moss (C. C. A. 4) 46 F.(2d) 948; Maners v. Ahlfeldt (C. C. A. 8) 59 F.(2d) 938; Manufacturers Acceptance Corp. v. Hale (C. C. A. 6) 65 F.(2d) 76; Alexander v. Theleman (C. C. A. 10) 69 F.(2d) 610; Rasmussen v. Gresly (C. C. A. 8) 77 F.(2d) 252.

Since the burden of proof was upon appellant, there can be no reversal unless the evidence in support of its claim is so convincing that we can fairly say that there is no reasonable ground for difference of opinion concerning it. The claims being founded on transactions between closely affiliated corporations, they must be subjected to rigid scrutiny, Western Distributing Co. v. Public Service Comm., 285 U. S. 119, 52 S. Ct. 283, 76 L. Ed. 655; Alexander v. Theleman, supra; Howland v. Corn (C. C. A. 2) 232 F. 35; Ohio Valley Bank Co. v. Mack (C. C. A. 6) 163 F. 155, and even uncontradicted evidence, if discredited or improbable, need not be accepted as true. Rasmussen v. Gresly, supra: Reiss v. Reardon (C. C. A. 8) 18 F.(2d) 200.

Since 1925 appellant has owned 14,000 of the 17,000 shares of the bankrupt's common stock outstanding, and 9500 of the 11,500 shares of preferred. Appellant sublet a part of its business premises to the bankrupt, sold ice, oil, and refrigeration to it, and loaned it money. The bankrupt sold some of its products to appellant. Forbush was president of both companies and active in the management of both. Bliesner, the other stockholder of the bankrupt, was general manager in name of the bankrupt but early in 1932 Forbush installed his son-in-law in the bankrupt's office who relieved Bliesner of some of his responsibility. The autocratic control of Forbush over the bankrupt is indicated by the circumstance that the refrigeration furnished bankrupt by appellant, for which claim is now made, was so imperfect that from 10 to 15 gallons of ice cream a day were spoiled, resulting in an aggregate loss of large sums and many dissatisfied customers. This poor refrigeration commenced as far back as 1928 and became increasingly worse until bankruptcy intervened in December, 1932. Bliesner complained to Forbush about it repeatedly, but the condition was not corrected.

The books of the bank carrying the accounts of these affiliated companies leave no doubt that many years ago appellant loaned the bankrupt moneys as claimed, and the fact is not disputed that appellant extended credit from time to time to the bankrupt. But that money was once loaned, or credit once extended, does not mean that it is still owing. We are concerned with the state of the account in December, 1932, and not as it stood in 1925.

The referee was not bound to accept as true statements of Forbush or his employees; more, he would not have been justified in doing so. Forbush and his counsel admit that on the eve of bankruptcy they forged minutes of directors' meetings purporting to authorize increased salaries to Forbush and others; falsified the books of account to correspond, altering some and removing some loose-leaf ledger sheets; assigned to themselves accounts receivable to secure these fictitious salaries in fraud of the creditors—criminal offenses for which the guilty have been convicted. Brayton v. United States (C. C. A. 10) 74 F.(2d) 389. The referee had to deal, then, with one who is willing to defraud creditors and to forge books of account. Certainly it cannot be said that

claims, supported by the testimony of such men and books which have been doctored in vital respects, have been incontrovertibly proven.

Peculiarly, too, is this a case where the experienced referee's judgment on facts should not be lightly disturbed. Even the lifeless record indicates evasive witnesses with conveniently poor memories when the questions became embarrassing; but we have not had the opportunity to observe what answers, if any, were given with spontaneous candor, and what with studied evasiveness. Other incidents of the trial, including circumstances under which a missing book of account was rediscovered, gave the referee a decided advantage over this court in passing upon the integrity of these claims.

But even the record discloses enough. A disinterested auditor, appointed by the referee, who spent 21 days in an audit of all the books, stated in his report that

"many of the essential and important records of the Polar Ice Cream Company could not be found."

"The check register from March, 1927, to March, 1929, could not be located."

"Purchase records were located and checked, March, 1925, to December 31, 1925, such records being missing from January 1, 1926, to May, 1929, except for a few entries appearing in the volume of the check register prior to March, 1927, as above referred to."

"Cash and check records prior, to 1927, however, could not be located."

"The fact that many important records and supporting data for the accounts could not be located, has made it a very difficult task to ascertain the real facts underlying the transactions between these affiliated companies."

"In numerous instances the integrity of the records has been brought into question by the many erasures and changes that have been found. This applies not only to records of the Polar Ice Cream Company, but in several instances was observed in the records of the Forbush Company, involving transactions with the Polar Ice Cream Company."

Checks issued during two entire years when business generally was at its peak, might well disclose payment of indebtedness then existing. They might well disclose a sufficient balance the other way to offset later advances.

The bookkeeper testified that she had substituted pages in the journal at the request of and in the presence of Forbush; Bliesner and Brayton, attorney for Forbush, testified that ledger sheets were taken out and others substituted at the time the company took bankruptcy. Forbush testified he knew of the substitutions at the time he first testified the books were correct.

There is more, much more; but it is enough to say that the creditors of this estate should not be despoiled by allowing the claims of a parent company supported by confessedly forged books and the testimony of those confessedly guilty of an effort to defraud creditors, and where the most important records—those of payments—are lost and unaccounted for. Bankruptcy may not have been contemplated when the credits were extended; but the books disclosing the truth of these intercorporate transactions may well have been altered or lost on the eve of bankruptcy, while the officers were engaged in the task of overhauling the books to disclose other indebtedness not in fact incurred.

The referee also concluded that the bankrupt was a mere adjunct of appellant or a device used by appellant to defraud other creditors. While corporations are separate entities in the eyes of the law, courts are not blinded by formal doctrine, and if in truth and fact one corporation is but an instrumentality of another, the courts treat it as such; nor does the doctrine stand as an insurmountable barrier when courts are called upon to redress or prevent fraud. The courts, in their quest for truth, have looked through the form to get at the substance in a great variety of cases, in four of which at least the precise question here has been presented. In each it was held that a parent could not share with other creditors in distributing the estate of the bankrupt child. Edward Finch Co. v. Robie (C. C. A. 8) 12 F.(2d) 360; In re Muncie Pulp Co. (C. C. A. 2) 139 F. 546; Gay v. Hudson River Elec. P. Co. (C. C. A. 2) 187 F. 12; Clere Clothing Co. v. Union Trust & Sav. Bank (C. C. A. 9) 224 F. 363; Remington on Bankruptcy, vol. 4, § 1538. If the capital of the bankrupt represented money or property paid in by the stockholders, if appellant honestly extended credit to it in due course, if there was no intent to defraud creditors, if there was no conceal-

ment or misrepresentation, a different rule applies. Finn v. George T. Mickle Lumber Co. (C. C. A. 9) 41 F.(2d) 676; Wheeler v. Smith (C. C. A. 9) 30 F.(2d) 59; Peckett v. Wood (C. C. A. 3) 234 F. 833; In re Watertown Paper Co. (C. C. A. 2) 169 F. 252. The bankrupt was not a wholly owned subsidiary of appellant, Bliesner having a substantial holding of both common and preferred stocks; the businesses of the two corporations, while related in part, were different in part. Appellant did, however, control and dominate the bankrupt; was that control exercised in fraud of creditors? The referee so found; that finding finds ample support in the same evidentiary facts which we have heretofore noted in connection with the integrity of the claim.

Even if the bankrupt cannot fairly be considered as a mere adjunct of appellant, the two concerns were closely affiliated, and their transactions inter sese must be rigidly scrutinized when the rights of third parties are involved. Consolidated American Royalty Corporation v. Taliaferro (C. C. A. 10) 78 F.(2d) 802. The proof here falls far short of withstanding such scrutiny, and the order appealed from is affirmed.